NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DESIRAE M., *Appellant,*

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, L.M., *Appellees.*

No. 1 CA-JV 13-0190
FILED 03/25/2014

---

Appeal from the Superior Court in Maricopa County
JD20143
The Honorable Larry Grant, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll, Scottsdale
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**O R O Z C O**, Judge:

**¶1**　　　　Desirae M. (Mother) appeals from the juvenile court's order terminating her parental rights to L.M. (Child). Mother argues the juvenile court erred in finding that reasonable and diligent efforts were made to reunify Mother and Child. She also argues that severance is not in Child's best interests. For the reasons discussed below, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　In March 2011, Child found Mother unconscious. Mother was hospitalized as a result of an overdose of prescription medication. On March 28, 2011, Child's grandmother filed a private dependency petition, and the Arizona Department of Economic Security (ADES) subsequently intervened. Child was placed with the Maternal Grandparents (Grandparents) and has remained in their care. Six months after Child was removed from Mother's care, Mother overdosed a second time.

**¶3**　　　　While in Mother's care, there was evidence that Mother neglected Child. For instance, Child missed twenty-seven of forty-eight days of kindergarten and of the twenty-one days Child did attend school, she was at least thirty minutes late for class, eleven times. After ADES placed Child in Grandparents' care, Child did well.

**¶4**　　　　At the dependency trial, Mother advised the juvenile court that she denied the allegations in the petition, but submitted the issue of dependency to the juvenile court for determination. The juvenile court found that the petition's allegations were true and found Child dependent. The juvenile court approved the family reunification case plan.

**¶5**　　　　As part of the case plan, Mother received services offered by ADES through TASC and TERROS. She was referred for drug screening at TASC. From May 2011 through September 2011, Mother consistently tested positive for methadone and occasionally tested positive for opiates and benzodiazepines. Mother stopped testing in September 2011, the

same month as her second overdose. Mother resumed testing in November 2011, and tested positive for alcohol on several occasions. Mother missed her tests at least eight times from January 2012 through June 2012.

¶6            ADES referred Mother for psychological services. She completed a full evaluation with a psychologist in August 2011. The psychologist diagnosed Mother with opioid dependence, a depressive disorder, an anxiety disorder, and various personality disorders. Mother also participated in a psychiatric evaluation, wherein the psychiatrist noted that "prognosis is extremely poor. Her degree of opioid misuse, level of denial, and lack of insight make it very unlikely that she will be capable of providing minimally adequate parenting to [Child]." The psychologist recommended that before Child be returned to Mother, Mother should complete a drug treatment program, participate in aftercare, continue with drug screens, and be free of methadone.

¶7            ADES also referred Mother to substance abuse treatment where her participation was inconsistent until she overdosed a second time in September 2011. Between November and December 2011, Mother began new outpatient treatment for drug addiction and completed the program in March 2012. However, she refused to participate in aftercare. Mother later declined to reengage in standard outpatient substance abuse treatment offered by ADES after she tested positive for alcohol.

¶8            Mother was also referred to parent aid services. Caseworkers noted that Mother was not open to constructive criticism and was argumentative with the parent aides assigned to supervise visits with Child. Mother initially refused to participate in one-on-one parenting skills meetings with parent aides, and her attendance to visitations was "sporadic." A caseworker also noted that while Mother had become more appropriate since being clean, there were concerns that Mother was having inappropriate conversations with Child that the parent aide may not have observed or heard. For example, the ADES caseworker testified that Mother upset Child at a visit when Mother asked Child why Child was not wearing a friendship bracelet the two had exchanged. After this interaction, Child experienced severe anxiety on visitation days, which school counselors could not alleviate. Eventually, Child became hysterical in anticipation of visits Mother. Finally, Child refused visitations. Mother continued to attend some of her one-on-one sessions after Child stopped attending visitations, but this referral ended early.

¶9        Mother presented evidence that she and Child continued to have a good bond as recent as September 2011.  Nonetheless, visits between Mother and Child stopped in June 2012 because Child refused to participate in visitation.  Mother requested family counseling, which never occurred because Child's counselor, who had diagnosed Child as suffering from post traumatic stress disorder, reported that Child was not ready to attend family counseling with Mother.

¶10        Mother eventually stopped reaching out to Child.  Mother argued she did not send Christmas or birthday cards or gifts to Child because she was not permitted to see Child on those days.  Mother testified that she did not send anything to Child for holidays because she did not trust that Child would actually receive her gifts if she just sent them through the mail.  Moreover, Mother did not send Child letters.  In fact, Mother refused to respond to a letter from Child which explained that Child wished to continue living with Grandparents.  Pursuant to the reunification plan, Mother could call Child twice per week, but Child often refused to speak with Mother.  At the March 2013 hearing, Mother testified that it had been six to eight weeks since she had last spoken with Child on the phone.

¶11        In October 2012, the juvenile court approved the change in the case plan from reunification to severance and adoption.  ADES filed a motion to terminate the parent-child relationship on November 2, 2012.  In its motion, ADES argued that Child had been in an out-of-home placement for longer than fifteen months, ADES had made diligent efforts to provide family reunification services, but Mother was unable to remedy the circumstances that caused Child to be in an out-of-home placement, and there was a "substantial likelihood that Mother [would] not be capable of exercising proper and effective parental care and control in the near future."  ADES also noted that termination would serve Child's best interests because Child was adoptable, which would provide permanency and stability to Child.

¶12        At the contested severance hearing, Mother testified that she missed drug tests because of transportation problems, work conflicts, and other issues, but that she had given up prescription drugs "cold turkey."  Mother acknowledged that she had limited contact with Child since Child was removed.

¶13        At the severance hearing, ADES presented evidence that Mother failed to consistently engage in services during the fifteen months that Child was in care, Child refused visitation with Mother, and Mother

4

was unable to parent Child. ADES's case manager testified that she was "concerned that [Mother was] not participating in her monthly urinalysis testing and [was not] demonstrating that she . . . is in fact sober." Although Mother had provided ADES with documentation of her Narcotics Anonymous attendance in October 2012, she had not provided any more recent documentation. The ADES case manager also testified that even in light of the fact that Mother had participated in some services, she had not fully engaged, and did not appear to have taken any value from the services. The case manager opined that Mother was not prepared to parent, and Child would be at risk if returned to Mother's care because Mother had not addressed all of her mental health issues. Further, Mother had failed to demonstrate changes in her own behaviors to help Child move past the traumatic events surrounding Mother's addiction, neglect, and overdose. Finally, the case manager testified that it would be in Child's best interests to terminate Mother's parental rights because termination would provide Child with a stable, permanent home, free from neglect and drug abuse.

¶14 A licensed psychologist testified at the hearing that he had evaluated Mother's psychological condition. From this evaluation, he was concerned with Mother's parenting skills but believed Mother was not honest about her drug use.

¶15 Based on the evidence presented, the juvenile court found that: (1) Mother overdosed on her prescription medication on March 9, 2011; (2) Mother became unconscious as a result of this overdose; (3) Child discovered her unconscious Mother; (4) Child came into ADES's care and custody as a result of Mother's drug overdose; (5) ADES has offered services to Mother to help Mother overcome her addiction and reunite with Child; (6) Mother willfully refused to engage in services to address her substance abuse problem; (7) Mother's chronic substance abuse prevented her ability to parent Child; (8) Child has been in ADES's care and custody for longer than fifteen months; and (9) it would be in Child's best interests to terminate Mother's parental rights. Accordingly, the juvenile court entered an order terminating Mother's parental rights.

¶16 Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 (2003), and -2101.A.1 (Supp. 2013).

## DISCUSSION

¶17     We review severance orders for abuse of discretion. *See, e.g.,* *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004). "Because the trial court is in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings, this court will not reweigh the evidence, but will look only to determine if there is evidence to sustain the court's ruling." *Id.* (internal quotation marks and citations omitted). We view the facts in the light most favorable to sustaining the juvenile court's decision. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App. 2002). We will only disturb the juvenile court's decision upon a showing of abuse of discretion or that the juvenile court's findings of fact were clear error. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8, 83 P.3d at 47. Unless no reasonable evidence supports the juvenile court's findings of fact, we will accept the juvenile court's findings of fact as true. *Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205.

¶18     In order to terminate Mother's parental rights, the court must find ADES has proven: (1) any one of the statutory grounds for termination by clear and convincing evidence; and (2) termination is in the best interests of the child by a preponderance of the evidence. *See* A.R.S. §§ 8-533.B (Supp. 2013), -863.B (2007); *see also Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12, 123 P.3d 186, 189 (App. 2005).

I.     Reasonable Reunification Efforts

¶19     Mother argues that the trial court erred when it held that ADES had provided Mother with reasonable services and diligent efforts towards family reunification. Before acting to terminate parental rights pursuant to A.R.S. § 8-533.B.11, it is well established that ADES "has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14, 256 P.3d 628, 632 (App. 2011). However, ADES is not required "to provide every conceivable service or to ensure that a parent participates in each service it offers." *In re Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994). Rather, ADES must provide the parent with services as well as "the time and opportunity to participate in programs designed to help her to become an effective parent." *Id.*

¶20     At the severance hearing, ADES presented evidence of the long history of extensive services it provided to Mother to improve her

parenting skills and to address her mental health issues and prescription drug addiction. Although Mother successfully completed the TERROS program to overcome her prescription drug addiction, she refused aftercare services and failed to regularly participate in urinalysis testing. Therefore, after two years in treatment, Mother failed to demonstrate a substance-free lifestyle, which directly impacts her ability to safely parent Child. Moreover, the juvenile court found that Mother failed to foster an ongoing relationship with Child by refusing to provide Child with birthday or Christmas cards or gifts.

¶21        Accordingly, sufficient evidence supports the juvenile court's findings that ADES had provided Mother with reasonable and diligent services so that she could become an effective parent. Therefore, we affirm the juvenile court's findings.

II.    Child's Best Interests

¶22        Mother also argues that the juvenile court erred by finding that severance was in Child's best interests. Whether severance is in a child's best interests is a factual question for the juvenile court to determine. *See Jesus M.*, 203 Ariz. at 282, ¶ 13, 53 P.3d at 207. To support a finding that termination is in a child's best interests, ADES must prove that Child will affirmatively benefit from the termination of Mother's parental rights. *See Mary Lou C.*, 207 Ariz. at 50, ¶ 19, 83 P.3d at 50. This means that the juvenile court must make a finding defining how the child would either (1) benefit from termination or (2) be harmed by a continued relationship with the parent. *Id.*

¶23        In this case, the juvenile court found that severance would provide Child "with stability and permanency as she is in an adoptive placement." Evidence of an adoption plan or that the child is "adoptable" is sufficient to satisfy a finding that the child would benefit from the termination of parental rights. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 378, ¶ 7, 982 P.2d 1290, 1292 (App. 1998). At the time of the termination hearing, Child was thriving in her placement with Grandparents, and they wanted to adopt her.

¶24        Accordingly, sufficient evidence supports the juvenile court's finding that termination of Mother's parental rights was in the best interests of Child. We therefore affirm.

## CONCLUSION

¶25        For the reasons discussed above, we affirm the juvenile court's order severing Mother's parental rights.



Ruth A. Willingham · Clerk of the Court
FILED: gsh