NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LESTER L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.L., L.L., *Appellees*.

No. 1 CA-JV 15-0103
FILED 8-11-2015

Appeal from the Superior Court in Mohave County
No. S8015JD201300045
The Honorable Richard Weiss, Judge

**AFFIRMED**

COUNSEL

Erika A. Arlington, Esq., PC, Flagstaff
By Erika A. Arlington
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Lawrence F. Winthrop joined.

---

J O H N S E N, Judge:

¶1 Lester L. ("Father") appeals the superior court's judgment severing his parental rights to his son and daughter, born in 2000 and 2001, respectively, on grounds of neglect, chronic drug abuse and 15 months' time in care, pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(2), (3) and (8)(c) (2015).[1] On appeal, Father argues only that the superior court erred by allowing the Department of Child Safety ("DCS") to deny him visits with the children and that his trial counsel was ineffective for failing to press that issue before the superior court. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The children were taken from Father in July 2013 after he was arrested and charged with domestic violence against his significant other. In the course of the subsequent dependency, the children told investigators that Father had physically abused them, and Father admitted he abused drugs. In the months following the children's removal, Father was incarcerated intermittently and subject to prosecutions in Arizona and Nevada.

¶3 Father agreed to a case plan that required him to complete parenting classes, domestic violence counseling and substance abuse assessment with follow-up recommendations, and to submit to random urinalyses for 30 days. Upon his release from incarceration, he was to have supervised visitation at least once a week for two hours, and supervised telephone contact with the children twice a week "at the discretion of placement." After Father was released from jail in August 2013, however, he missed about half of his scheduled visits. On December 23, 2014, DCS moved to terminate Father's parental rights. At the subsequent trial in March 2015, a DCS supervisor testified Father had failed to participate in random drug testing, failed to complete a substance-abuse assessment and

---

[1] Absent material revision after the relevant date, we cite a statute's current version.

had not enrolled in anger-management or domestic-violence classes. The superior court granted the motion to terminate, finding by clear and convincing evidence the statutory grounds of neglect (Father failed "to provide an adequate home and financial means to meet the daily needs of his children"), chronic abuse of dangerous drugs, and 15 months' time in care. The court further found DCS had "made reasonable efforts to provide [Father] with rehabilitative services" and "appropriate reunification services," and also found, by a preponderance of the evidence, that termination was in the best interests of the children.

¶4        We have jurisdiction of Father's timely appeal pursuant to A.R.S. § 8-235(A) (2015).

## DISCUSSION

¶5        The superior court may terminate a parent-child relationship upon proof by clear and convincing evidence of at least one of the statutory grounds set out in A.R.S. § 8-533(B). *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). On appeal, this court will accept the superior court's findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶6        Termination of a parent's rights on grounds of time in care or substance abuse requires proof that DCS has made a diligent effort to rehabilitate the parent and reunify the family. A.R.S. § 8-533(B)(8)(c) (time in care); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453 n.3 (App. 2005) (substance abuse).[2] Among such efforts may be the allowance and facilitation of visits between a parent and child. *See In re Maricopa County Juv. Action No. JD-5312*, 178 Ariz. 372, 375 (App. 1994) ("[v]isitation with the child may be critical to the parent's ability" to show child should be returned to his custody).

¶7        On appeal, Father argues DCS failed to make diligent or reasonable efforts to provide him with appropriate reunification services because it did not allow him visits with his children after April 2014. He argues the superior court erred by allowing DCS to end his weekly

---

[2]        We need not address whether DCS has any legal obligation to provide reunification services when it moves for termination of parental rights based on neglect. *See* A.R.S. § 8-533(B)(2).

telephone visits without sufficient evidence that the visits were endangering the children. He further argues his trial counsel was ineffective because counsel failed to press the visitation issue in the superior court and to ask the court to make an appealable ruling on the issue.

¶8 After Father's son and daughter were taken into care, they required therapeutic counseling to address their fear of Father arising from his domestic violence and inability to control his temper. In spring 2014, the children, then 14 and 13, told authorities they wanted no more visits with Father. On May 7, 2014, Father filed a "Motion for Status Hearing Regarding Termination of Visitation," arguing that his weekly telephone visits had ceased and that it was "difficult, if not impossible" to achieve reunification without visitation.

¶9 On June 6, DCS convened a Child Family Team meeting to address visitation. According to a report submitted to the court that month, the team agreed "to facilitate a telephonic visitation with Father in a therapeutic environment with the children's therapist." It was thought that "[t]his will provide the necessary support and safety to the children and also allow them an opportunity to process the visit in a therapeutic setting." The therapeutic telephone visit, however, did not go well. According to a record submitted to the court, "the children were reported to be fearful and their engagement and conversation was very limited." Further, a case worker reported, "[t]he telephonic visit with the children did not prove to be beneficial for the children due to their underlying fear of their father and the trauma experienced prior to removal. The children, through their Counsel and therapist[,] continue to refuse any further contact with Dad."

¶10 The single therapeutic telephonic visit that was the product of the June 6 team meeting apparently was the children's last visit with Father. After the next hearing in the case, held on July 2, the superior court issued an order that stated, "[t]his is the time for Permanency Hearing and Status re: Visitation." The record does not disclose, however, what, if anything, occurred at the hearing concerning visitation. The court next took up the issue of visitation at a hearing on August 20. According to the order the court issued at the conclusion of the hearing, the children continued to say they "wish to have no visitation," but Father "wants in home visits." The court made no ruling concerning visitation, however.

¶11 The record in this case contains sufficient evidence to support the superior court's implicit decision to decline to require DCS to provide visits after the children said they no longer wanted to see or talk to Father and after the failure of the June 2014 therapeutic visit. According to the

4

DCS case manager, Father's son and daughter were afraid of Father because of his drug habit and his anger issues. The record demonstrates grounds for their concern. Shortly after the children were taken into care, Father was jailed for 60 days in connection with allegations of domestic violence. The son said Father once became angry and threw him into a table, and both children expressed concern that if Father were allowed to visit with them in person, he would run off with them. At trial, Father testified he disciplined the children using "[o]ld school" means: "They got a lot of whippings, right," sometimes leaving welts. He acknowledged under oath that was enough to cause his children to fear him.

¶12        Under the circumstances, including the children's well-founded fear of Father and their expressed desire not to see or talk to him, the superior court was not required to order DCS to allow Father to visit the children. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 17 (App. 2004) ("[W]e will presume that the juvenile court made every finding necessary to support the severance order if reasonable evidence supports the order."); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (State not required to provide futile efforts at reunification); *JD-5312*, 178 Ariz. at 375-77 (affirming order, entered after hearing, denying visitation rights based on superior court's findings that visits with parent were so disruptive that termination of visits was in children's best interests). Further, Father does not dispute that DCS offered him many other reunification services, most of which, as noted, he failed to accept.

¶13        Nor do we accept Father's contention that his trial counsel prejudiced his defense of the termination proceedings by failing to press the superior court to allow visitation or to issue an appealable order on the issue. Even if, as Father argues, his lawyer was ineffective or inadequate, for the reasons stated, Father's defense was not prejudiced as a result. *See John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 325, ¶ 18 (App. 2007). During the intermittent periods in the proceedings when he was not incarcerated and was allowed visits, Father frequently missed the visits. Because the record supported the denial of visitation and because Father does not dispute that sufficient evidence supported the existence of statutory grounds for termination, he cannot prove that, had his counsel more vigorously pressed for visitation after April 2014, the outcome of the termination proceedings "would have been different." *See id*.

**CONCLUSION**

¶14        For the reasons stated above, the superior court's judgment terminating Father's parental rights as to his son and daughter is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: RT