IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |  |
|---|---|---|---|
| JENNIFER G., | ) | | |
| | ) | 2 CA-JV 2004-0095 | |
| Appellant, | ) | DEPARTMENT B | |
| | ) | | |
| v. | ) | O P I N I O N | |
| | ) | | |
| ARIZONA DEPARTMENT OF | ) | | |
| ECONOMIC SECURITY, | ) | | |
| DANIEL G., and ALEXIS G., | ) | | |
| | ) | | |
| Appellees. | ) | | |
| | ) | | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. MD200300063

Honorable Charles A. Irwin, Judge

REVERSED AND REMANDED

Mark A. Suagee, Cochise County Public Defender
 By Stan A. Lehman and Kelly A. K. Smith                                      Bisbee
                                                                  Attorneys for Appellant


Terry Goddard, Arizona Attorney General
 By Claudia Acosta Collings                                                 Tucson
                                                        Attorneys for Appellee Arizona
                                                       Department of Economic Security


Michael S. Politi, Cochise County Legal Defender
 By Benna R. Troup                                                          Bisbee
                                                              Attorneys for Appellees
                                                               Daniel G. and Alexis G.

P E L A N D E R, Chief Judge.

¶1 Jennifer G. appeals from the juvenile court's order terminating her parental rights to her two children, Daniel, born July 27, 2001, and Alexis, born January 8, 2003. Granting a motion for summary judgment filed by the Arizona Department of Economic Security (ADES), the juvenile court severed Jennifer's parental rights on the grounds of chronic substance abuse, A.R.S. § 8-533(B)(3), and the duration of the children's court-ordered, out-of-home placement. § 8-533(B)(8)(a). On appeal, Jennifer challenges the use of summary judgment in contested severance matters on both statutory and constitutional grounds. In addition, she claims the length-of-time-in-care ground for severance pursuant to § 8-533(B)(8)(a) is unconstitutional. Alternatively, she contends the juvenile court granted summary judgment for ADES based on erroneous factual findings and legal conclusions. Because ADES failed to establish that there were no disputed issues of material fact and that it was entitled to judgment as a matter of law, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In August 2003, ADES took custody of the children and filed a petition alleging they were dependent, as defined in A.R.S. § 8-201(13)(a), because Jennifer was unwilling or unable to parent them, had inadequately supervised them, and had maintained an unsafe and unsanitary home environment due to her use of the drug crystal methamphetamine. The juvenile court later adjudicated the children dependent when

2

Jennifer failed to appear for a hearing to contest these allegations.[1] She never regained custody of Daniel and Alexis, who have remained in foster care or other out-of-home placements since their removal. In June 2004, ADES filed a motion to terminate Jennifer's parental rights. In August 2004, ADES moved for summary judgment.

¶3 In support of its motion for summary judgment, ADES filed the affidavits of three Child Protective Services (CPS) case managers, along with several exhibits.[2] Jennifer filed a response, her own affidavit, and several supporting documents. Through counsel, the children filed a reply, in which ADES purportedly joined. In reviewing the juvenile court's grant of summary judgment, we view the evidence in the light most favorable to the appellant. *See Ancell v. Union Station Assocs.*, 166 Ariz. 457, 458, 803 P.2d 450, 451

---

[1]The identity of the children's father or fathers is unknown. The parental rights of John Doe or any man claiming paternity of Daniel or Alexis were terminated on November 9, 2004.

[2]Rule 56(e), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, requires that supporting or opposing affidavits "be made on personal knowledge," "set forth such facts as would be admissible in evidence," and "show affirmatively that the affiant is competent to testify to the matters stated." In addition, Rule 56(e) requires that "[s]worn or certified" copies of any papers referred to in an affidavit be attached or served with the affidavit. The parties here did not uniformly comply with these requirements. In fact, ADES asserted below that the factual basis for its motion was set forth in some of the unsworn, uncertified documentary exhibits it filed, which ADES claimed constituted admissible evidence pursuant to Rule 45, Ariz. R. P. Juv. Ct., 17B A.R.S. Rule 45 provides that protective services workers' reports and certain written evaluations are admissible in evidence at dependency hearings when such documents are properly disclosed and their authors are available for cross-examination. We question ADES's reliance on Rule 45 in a summary proceeding for termination of parental rights, but that issue is not before us–no party objected to the affidavits or supporting materials of any other party. Therefore, any error in the juvenile court's consideration of them was waived. *See Ancell v. Union Station Assocs.*, 166 Ariz. 457, 460, 803 P.2d 450, 453 (App. 1990).

(App. 1990). However, we consider as true those facts alleged by ADES's affidavits that Jennifer did not controvert. *Id.* Applying these standards, the facts are as follows.

**¶4** After removing the children from Jennifer's custody, ADES sought her participation in an array of services. Among these were a psychological evaluation, random urinalysis, group and individual counseling through Southeastern Arizona Behavioral Health Services (SEABHS), Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) meetings, and visitation with the children. ADES also offered Jennifer transportation assistance.

**¶5** Dr. Todd Flynn, a psychologist who evaluated Jennifer in early October 2003, diagnosed borderline intellectual functioning and provisionally diagnosed dysthymic disorder and methamphetamine abuse. The dysthymic disorder diagnosis was provisional because of the possibility that Jennifer's drug use alone was responsible for her symptoms. The methamphetamine abuse diagnosis was provisional for lack of sufficient verification: Flynn was aware of only one documented use of amphetamines, which was insufficient to warrant a diagnosis of abuse unless it was "representative of a pattern of use that significantly impair[ed Jennifer's] functioning."

**¶6** Between August 2003 and August 2004, Jennifer was expected to submit over 100 urinalysis samples; she submitted nine. Amphetamines were detected in eight of the nine urine samples tested, including one Jennifer had provided in May 2004, nine months after ADES had taken custody of her children.

**¶7** Between September and December 2003, she participated in some of the individual and group counseling available to her through SEABHS. However, she did not

4

attend any individual sessions after October. Although she attended several group sessions in October and November, the treatment provider documented her refusal to cooperate. In December, Jennifer attended two of the eight group sessions for which she was scheduled, and the treatment provider described her participation as follows: "Client does not listen, needs frequent refocusing and is deliberately disrupting or pouting in group."

¶8 Lack of transportation sometimes hampered Jennifer's ability to participate in services. Cathi Juanmijo, a CPS case manager, personally provided transportation so Jennifer could attend group counseling sessions with SEABHS. Sometime in December 2003, Jennifer told Juanmijo she had made other transportation arrangements but then stopped attending group sessions. In addition, Juanmijo later learned that Jennifer had not actually attended the group sessions to which Juanmijo had driven her, but had instead left the building after being dropped off.

¶9 Jennifer presented evidence that her participation in some services had exceeded that which ADES had alleged. The evidence presented by ADES showed that Jennifer had not obtained substance abuse treatment after December 2003, although SEABHS workers did have contact with her in February, March, and July 2004 in an effort to engage her in the program. However, Jennifer supplemented her response to the motion for summary judgment with exhibits that showed she had attended a total of six group sessions between April and June 2004. Similarly, ADES's evidence showed that Jennifer had attended a total of eight AA or NA meetings in October and November 2003, but

5

Jennifer's supplemental exhibits showed she had attended seven additional meetings in November and December.

¶10 Jennifer was afforded opportunities for visitation with the children throughout the time they remained in ADES's custody. During the first two months after their removal, Jennifer was offered daily visitation and visited the children about three times per week. From November 2003 to March 2004, she was offered either weekly or twice-weekly visitation. She visited a total of seven times, approximately one-third of the visits offered. In April and May 2004, she did not visit the children at all. In June 2004, after ADES had filed the motion to terminate her parental rights, Jennifer resumed more frequent visitation, seeing Daniel and Alexis six times over the following two months.

¶11 In May 2004, the juvenile court held a permanency hearing pursuant to A.R.S. § 8-862 to determine the children's future status. At that hearing, the juvenile court found severance was the most appropriate permanent plan and ordered ADES to file a motion to terminate Jennifer's parental rights. ADES did so and then filed the successful motion for summary judgment that gave rise to this appeal.

## DISCUSSION

¶12 To terminate parental rights, a juvenile court must first find by clear and convincing evidence, A.R.S. § 8-863(B), the existence of at least one statutory ground for termination pursuant to § 8-533(B), and must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 22, 110 P.3d 1013, 1018 (2005). Termination on the ground of chronic substance abuse

6

required proof that Jennifer was unable to discharge her parental responsibilities "because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol" and that there were "reasonable grounds to believe that the condition w[ould] continue for a prolonged indeterminate period." § 8-533(B)(3). To order severance on this ground, the juvenile court must also have found that ADES had made reasonable efforts to reunify the family or that such efforts would have been futile. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, ¶¶ 31-34, 971 P.2d 1046, 1052-53 (App. 1999).[3]

¶13 Termination of Jennifer's parental rights on the alternate, nine-months-in-care ground required proof that the children had been in a court-ordered, out-of-home placement for at least nine months; that ADES had "made a diligent effort to provide appropriate reunification services"; and that Jennifer had "substantially neglected or wilfully refused to remedy the circumstances" necessitating the placement. § 8-533(B)(8)(a). Additionally,

---

[3]Section 8-533(B)(3), A.R.S., permits the termination of parental rights on the basis of either a parent's mental illness or deficiency or a parent's "history of chronic abuse of dangerous drugs, controlled substances or alcohol." In *Mary Ellen C.*, the state had sought and the juvenile court had granted an order terminating the mother's parental rights on the ground that the mother suffered from a mental illness or deficiency, rather than, as here, chronic drug abuse. The court found that the state's duty to make reasonable reunification efforts before terminating parental rights was inherently required by § 8-533(B)(3) and had a constitutional basis as well. The implicit requirement of § 8-533(B)(3) that the condition from which the parent suffers "'be proven not to be amenable to rehabilitative services'" is equally applicable when the state seeks severance on the ground of substance abuse. *See Steven K. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 483, ¶ 24, 113 P.3d 1240, 1247 (App. 2005), *quoting Mary Ellen C.*, 193 Ariz. 185, ¶ 31, 971 P.2d at 1052. We see no reason why the constitutional underpinnings of the state's obligation to undertake reasonable rehabilitative measures, as articulated in *Mary Ellen C.*, would not also apply in substance abuse cases. *See Mary Ellen C.*, 193 Ariz. 185, ¶ 32, 971 P.2d at 1052.

before ordering severance on this ground, the juvenile court was required to "consider the availability of reunification services to the parent and the participation of the parent in these services." § 8-533(C).

**¶14** We review the juvenile court's entry of summary judgment de novo, *see Sanchez v. City of Tucson*, 191 Ariz. 128, ¶ 7, 953 P.2d 168, 170 (1998), applying the same standards the trial court should use. *Schwab v. Ames Constr.*, 207 Ariz. 56, ¶ 17, 83 P.3d 56, 60 (App. 2004). A court should grant summary judgment only when there exists no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2; Ariz. R. P. Juv. Ct. 46(D), 17B A.R.S. In determining whether genuine issues of material fact exist, a court must draw all reasonable inferences in favor of the party opposing the motion. *See Rowland v. Kellogg Brown & Root, Inc.*, 210 Ariz. 530, ¶ 2, 115 P.3d 124, 125 (App. 2005). Summary judgment is not appropriate when a trial judge must "pass on the credibility of witnesses with differing versions of material facts," "weigh the quality of documentary or other evidence," or "choose among competing or conflicting inferences." *Orme Sch. v. Reeves*, 166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990). Mindful of the fundamental parental rights at stake in a severance action, *see Michael J. v. Arizona Department of Economic Security*, 196 Ariz. 246, ¶ 11, 995 P.2d 682, 684 (2000), we do not hesitate to apply these standards with exactitude.

**¶15** Here, ADES's own documents in support of summary judgment invited the juvenile court to make credibility determinations and established that Jennifer's and ADES's

versions of material facts differed. For example, ADES's statement of facts included this paragraph:

> The mother continues to make excuses for her non-compliance with services offered by the Department. She claims that she tries to call SEABHS therapists and case managers but they don't answer her calls. She claims that she can't go to group counseling because the schedule does not work for her although she does not work or go to school or have any positive outside activities. It appears that she tells her mother that the [random urinalysis scheduling] system is not telling her to test when, in fact, she is required to test each week.

Viewed in a light most favorable to Jennifer, her claims about the service providers' availability and her schedule could constitute her attempted explanation of why she was less than fully compliant with ADES's expectations of her. That these claims were "excuses" was not an objective fact, but rather ADES's characterization of her version of the facts derived from a negative inference about her credibility. In one of the case manager's affidavits, ADES presented statements that similarly placed different versions of the facts and the credibility of the witnesses at issue:

> After a court hearing on July 8, 2004, I met with Jennifer and her family. Jennifer stated that she did not go to SEABHS groups because the schedule did not work for her. When I asked whether she had contacted [a SEABHS worker], she stated she had but there was no answer. I then informed Jennifer that I was in frequent contact with [the SEABHS worker] and she had no records of Jennifer's attempts to contact her. . . .
>
> I talked to Jennifer about drug testing. Sharon M[.], Jennifer's mother, stated that Jennifer calls every day and they tell her not to go and that's why she doesn't go for tests. I told

9

her that seemed strange as the [random urinalysis scheduling] system has not changed and she is to be taking tests each week.

¶16 The controverted facts set forth in the quoted documents were material to whether the alleged grounds for severance existed. Under § 8-533(B)(8)(a), ADES must establish that it made a "diligent effort" to provide appropriate services and that the parent "substantially neglected or wilfully refused" to remedy the circumstances causing the child's out-of-home placement. In turn, a trier of fact must consider not only the parent's participation in services, but also the availability of those services. § 8-533(C). Consequently, whether Jennifer had difficulty accessing services or communicating with the service providers were disputed facts that were material to whether ADES had established at least two elements of the nine-months-in-care ground under § 8-533(B)(8)(a). Those same disputes were also material to whether ADES had established under § 8-533(B)(3) that ADES had made reasonable efforts to reunify the family, *see Mary Ellen C.*, 193 Ariz. 185, ¶¶ 31-34, 971 P.2d at 1052-53, and that Jennifer's chronic drug abuse would continue for a prolonged, indeterminate period of time.

¶17 The juvenile court decided these issues in ADES's favor on both grounds, but in so doing must have adopted ADES's negative inferences about Jennifer and its positive determinations about the service providers' credibility. Although a trial court will presume the truth of evidence favorable to the moving party when an opposing party fails to controvert it, the court may do so when *only one* inference can be drawn from that evidence. *See Schwab*, 207 Ariz. 56, ¶ 16, 83 P.3d at 60. Otherwise, the evidence and all reasonable inferences must be viewed in favor of the party opposing the motion, *see Wells Fargo Bank*

10

*v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, ¶ 13, 38 P.3d 12, 20 (2002), and credibility determinations are inappropriate for summary judgment. *See Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.

¶18 In addition to ADES having placed the credibility of witnesses at issue, Jennifer presented evidence in opposition to the motion that was sufficient under the facts of this case to show ADES was not entitled to summary judgment. In finding pursuant to § 8-533(B)(3) that Jennifer's "chronic [drug] abuse will continue for a prolonged indeterminate time," the juvenile court relied on assertions contained in several paragraphs of ADES's statement of facts that the juvenile court found were material and "undisputed." Among those was a paragraph stating that Jennifer had agreed on March 10, 2004 "to return to drug treatment," but "had not participated in the program" as of May 11. Contrary to the juvenile court's finding that this fact was undisputed, Jennifer presented exhibits showing that she had participated in more group therapy and more AA or NA meetings than ADES's evidence showed she had, including four group-counseling meetings between March 10 and May 11. Notwithstanding the juvenile court's oversight, we note that during the hearing on the motion for summary judgment, ADES did not dispute Jennifer's evidence but argued, instead, that it was insufficient to create "genuine issues at law." We disagree.

¶19 Whether and to what extent Jennifer participated in the rehabilitative services ADES offered her was material under both grounds upon which the juvenile court terminated her parental rights. Under either ground, a trier of fact must assess the sufficiency of ADES's reunification efforts in relation to the parent's capacity and effort to take

11

advantage of any rehabilitative services offered. Such determinations frequently require the fact-finder to weigh evidence or assess credibility. Accordingly, even when there is general agreement about many of the underlying facts, summary judgment is nevertheless inappropriate if a trier, based on its weighing of the relevant factors, could draw different conclusions from those facts in light of the applicable legal standards. *Cf. Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191, 888 P.2d 1375, 1378 (App. 1994) ("Summary judgment is inappropriate where the facts, even if undisputed, would allow reasonable minds to differ."); *Shaw v. Petersen*, 169 Ariz. 559, 563, 821 P.2d 220, 224 (App. 1991) (although facts related to child's near drowning were largely undisputed, summary judgment reversed in negligence action because pool's dangerousness, parents' level of responsibility, and reasonableness of homeowners' conduct were factors to be weighed by jury).

¶20        Here, although it was undisputed that ADES had offered Jennifer a number of services, ADES failed to demonstrate whether those services had been appropriate. *See* § 8-533(B)(8)(a) (requiring agency with custody of child to make a "diligent effort to provide appropriate reunification services"); *Mary Ellen C.*, 193 Ariz. 185, ¶ 34, 971 P.2d at 1053 (recognizing state's duty "to undertake [rehabilitative] measures with a reasonable prospect of success" before terminating parental rights pursuant to § 8-533(B)(3)). In support of its motion, ADES submitted case manager Juanmijo's affidavit, in which she referred to Jennifer's psychological evaluation and stated, "[a]fter review of the evaluation, I determined that the services in place were appropriate based on Dr. Flynn's

12

recommendations." In response, Jennifer stated in her affidavit, "I . . . don't think that CPS offered the kind of services that would really help me."

¶21  "[A]ffidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment." *Florez v. Sargent*, 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996). Here, the case manager's opinion was almost as conclusory and nonspecific as Jennifer's, differing only in the case manager's reliance on Flynn's evaluation. But his evaluation, having been completed only six weeks after ADES had taken custody of Jennifer's children, tended to raise questions of fact on the issue of whether ADES ultimately offered Jennifer appropriate rehabilitative services. For example, Flynn wrote:

> [A]ll parties should understand that the Borderline Intellectual functioning leaves [Jennifer] with a limited capacity for abstract thinking, impaired reading comprehension and low-level receptive vocabulary (the ability to understand what is said to her[).] As intelligence goes down, concrete thinking goes up. I doubt that [Jennifer] will benefit at all from general descriptions of what she needs to do. She would do much better with a concrete list of simplistic goals to accomplish. In teaching her the skills of parenting, she will need to be shown what to do, told what to do, and modeled what [to do] and that process will need to be repeated over and over until it is [i]ngrained as a habit.

Accordingly, in concluding that the services ADES had offered were appropriate and deciding, implicitly, that they had a reasonable prospect for success, *see Mary Ellen C.*, 193 Ariz. 185, ¶ 34, 971 P.2d at 1053, the juvenile court must have placed greater weight on the case manager's opinion than Jennifer's. But on a motion for summary judgment, a trial court may not weigh the evidence. *See Orme Sch.*, 166 Ariz. at 311, 802 P.2d at 1010. Because the manner in which the parties presented the case required the juvenile court to weigh the

13

evidence on a disputed issue of material fact, the court should not have entered summary judgment.

**¶22** We acknowledge that in opposing ADES's motion, Jennifer did little to advance her cause. Rule 56(c)(2), Ariz. R. Civ. P., requires the opponent of a motion for summary judgment to "specify[] those paragraphs in the moving party's statement of facts which are disputed." Jennifer did not do that. An opponent must also set forth those facts that establish a genuine issue of material fact or otherwise preclude summary judgment. Ariz. R. Civ. P. 56(c)(2). Many of the facts Jennifer presented pertained to disputes that had already been decided, including facts relevant to the propriety of removing the children from her custody initially and to the subsequent adjudication of dependency. Jennifer had previously had an opportunity to litigate those issues, and the facts relevant to them did not necessarily bear upon whether grounds for severance existed. Finally, a party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Ariz. R. Civ. P. 56(e), 16 A.R.S., Pt. 2. Jennifer's assertions controverting ADES's claims tended to be more general than specific. For example, in her affidavit, Jennifer stated:

> I did attend some of the programs Child Protective Services asked me to go to. I was unable to go to other programs. One reason was that I did not have adequate transportation.
>
> . . . . I am not on drugs. I can provide adequate parenting care and control to my children until they're age 18.

14

In addition, she asserted in her statement of facts that one exhibit, consisting of notes made by a parent aide during Jennifer's supervised visits with the children, "shows appropriate behavior and shows that [Jennifer] has the necessary skills to parent her two children."

¶23 Despite these deficiencies in form, we find Jennifer's opposition, when coupled with the questions of fact raised by some of ADES's own documents, sufficiently demonstrated the existence of genuine, material factual disputes, and we disagree with the juvenile court's apparent conclusion that the "quantum of evidence" was so slight here as to justify denying Jennifer a trial. Though Jennifer might be unlikely to prevail at a trial on the merits, ADES was not entitled to summary judgment because material issues of fact could not be resolved without credibility determinations and weighing of evidence, matters peculiarly and exclusively for a trier of fact. Moreover, when, as here, a clear and convincing evidence standard applies, the inquiry on summary judgment is "whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either plaintiff or defendant." *Orme Sch.*, 166 Ariz. at 308, 802 P.2d at 1007. Drawing all reasonable inferences in Jennifer's favor, a reasonable trier of fact could determine that ADES failed to prove by clear and convincing evidence that grounds existed to terminate her parental rights pursuant to § 8-533(B)(3) or (B)(8)(a). The juvenile court's entry of summary judgment was therefore erroneous.

¶24 In light of our ruling, we do not reach Jennifer's claim that the ground for termination under § 8-533(B)(8)(a) is unconstitutional. *See Little v. All Phoenix S. Cmty. Mental Health Ctr., Inc.*, 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App. 1995) (appellate

15

court should refrain from ruling on constitutional questions when other principles of law are controlling and matter can be decided on nonconstitutional grounds). Nor do we address her related claims that the use of summary judgment as a vehicle to accomplish the termination of her parental rights is unconstitutional, was not authorized by statute or court rule, or violated her statutory right to a jury trial under A.R.S. § 8-223. *Id.* Finally, we need not address her claims concerning whether termination was in the children's best interests.

## CONCLUSION

¶25        ADES failed to establish below that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Accordingly, we reverse the juvenile court's order terminating Jennifer's parental rights to Daniel and Alexis, and we remand the case for further proceedings consistent with this decision.

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Presiding Judge


_____
PETER J. ECKERSTROM, Judge