NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JACQUELINE R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.R., *Appellees*.

No. 1 CA-JV 15-0169
FILED 11-5-2015

Appeal from the Superior Court in Maricopa County
No. JD13423
The Honorable Connie Contes, Judge

**REMANDED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Suzanne Sanchez, David C. Lieb
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge Samuel A. Thumma joined.

---

**S W A N N**, Judge:

¶1        Jacqueline R. ("Mother") appeals the order terminating her parental rights to her son, J.R. ("Child"). She contends that the termination order failed to state the factual basis for its finding that termination was in the best interests of Child, and that the order is therefore invalid. We agree that the order contained no specific findings to support the best interests determination. We therefore remand to the juvenile court to make the required findings.

**FACTS AND PROCEDURAL HISTORY**

¶2        Child was born on May 10, 2014. Shortly before the birth, Mother had moved from Texas to Arizona. Child was born substance-exposed, and the Department of Child Safety ("DCS") implemented a safety plan. Shortly after the birth, Mother violated the safety plan. DCS removed Child from Mother's custody on June 2, 2014.

¶3        In August, the court found Child dependent as to Mother because of unemployment, housing insecurity and drug use. DCS implemented a family-reunification plan concurrent with a plan of severance and adoption.[1] The plan included semiweekly drug testing, substance-abuse treatment, and psychological counseling. During that time, Child remained with a foster family.

¶4        Mother participated in once-weekly supervised visits with Child until she was arrested and extradited to Texas on drug possession and prostitution charges in September. The case aide reported at the time that Mother "was very nurturing with her son during the visits." Mother did not, however, participate in drug testing as required, testing only three

---

[1]        The court found Child dependent as to his father, and DCS moved to terminate his rights, as well. The father had an additional statutory allegation of abandonment as he had no contact with Child after August 2014. He did not contest the termination of parental rights for Child and has not appealed.

times between August and January. And during her incarceration, the service providers closed out her treatment and counseling services for non-attendance.

¶5 Before a scheduled review hearing, the Foster Care Review Board ("the Board") recommended changing the permanency goal from reunification to adoption, on the grounds that Mother had not participated in services or visits during her incarceration. The Board also noted that DCS had "significant service gaps or system problems," as it did not have a written case plan for Child, and that the Board needed "current documentation . . . to better assess the progress of the case." Mother was released from custody and returned to Arizona in early November; she was present at the hearing. The court declined to alter the permanency plan but gave DCS leave to seek severance if Mother did not fully comply with the services provided.

¶6 Mother resumed supervised visitation after the review hearing. But during those visits, she appeared to have psychological or substance-abuse issues, as she talked to herself and yelled at the case aide about nonexistent marks on Child. She ceased visiting Child after November 28, 2014. The case manager referred her again for drug testing and counseling, but she did not participate in any services after the review hearing. Mother did not appear at the next review hearing in February 2015, having been hospitalized for mental health care, and the court granted DCS's motion to change the case plan to severance and adoption.

¶7 In March, DCS moved to sever the parent-child relationship, alleging that Mother had a history of chronic dangerous drug abuse pursuant to A.R.S. § 8-533(B)(3), and Child, who was under three years old, had been in an out-of-home placement for six months or longer pursuant to A.R.S. § 8-533(B)(8)(b). Mother contested the termination in person at the initial hearing, denying the allegations. The court warned her that if she failed to appear at the severance hearing, she would waive her rights and the allegations against her would be deemed admitted. She resumed drug testing after the hearing but tested only three times, testing positive for drugs on the last test.

¶8 Though Mother had notice of the April severance hearing, she did not appear. The court found that her absence was without good cause and that by her absence she had waived her rights, and the court deemed the allegations admitted. The hearing proceeded in her absence. The case manager testified that Child needed permanence, the foster parents were willing to adopt, and Mother had failed to engage in services. The court determined that both statutory bases alleged were proven by clear and

convincing evidence and laid out the facts in support of its conclusions. With regard to the best interests analysis, the court stated simply that "[t]he Department has also met its burden of proof by a preponderance of the evidence that termination of parental rights is in the best interests of this child." The order contains substantially the same language: "THE COURT FINDS that the Department has proven by the preponderance of the evidence that the termination of the parent-child relationship is in the best interests of the child." The court granted the motion for severance based on the record and the case manager's testimony.

¶9        Mother timely appeals.

## DISCUSSION

¶10        Mother claims that the juvenile court's severance order is unsound because it failed to state the factual basis for its conclusion that severance was in the best interests of the child. We agree.

¶11        To sever parental rights, the court must find clear and convincing evidence of at least one statutory ground for severance, and that a preponderance of the evidence shows that severance is in the best interests of the child. A.R.S. § 8-533(B); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). The best interests determination must explain "how the [children] would benefit from a severance *or* be harmed by the continuation of the relationship." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (citation omitted).

¶12        The court's order must articulate specific findings of fact to support the severance. A.R.S. § 8-538(A); Ariz. R.P. Juv. Ct. 66(F)(2)(a). Those findings should allow this court "to determine exactly which issues were decided and whether the lower court correctly applied the law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012). We accept the court's findings of fact unless they are not supported by any reasonable evidence, and we will affirm the severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶13        Here, the order does not contain findings to support the severance order. Mother does not contend that the court's findings were inadequate to support the conclusion that at least one statutory basis for severance existed, and we agree that those findings were sufficient. But the court made no findings in support of the determination that severance is in the best interests of Child.

**¶14** DCS concedes that the court did not state the basis for its best interests determination, and urges us to affirm based on findings that the court could have made.[2] The court did state that its decision was "[b]ased upon the testimony and evidence presented and all matters of record . . . all of which the Court incorporates into the Court's findings and orders." But A.R.S. § 8-538(A) provides that the order "*shall* recite the findings on which the order is based." (Emphasis added.) Absent such findings, we have no basis upon which to determine whether the court properly exercised its discretion based upon the evidence before it. In view of the order's noncompliance with the statute, we have no alternative but to remand for entry of appropriate findings.

**¶15** According to DCS, the court "*could have* reasonably found" that Child would be harmed by the continuing relationship or benefited by the severance; DCS suggests that we "decide that the court could have reasonably based [the best interests] conclusion on the implied finding that termination would benefit [Child]." (Emphasis added.) That is the issue: the court could have made such findings, but it did not. Though the record contains some evidence to support a finding that termination was in the best interests of Child, the evidence was not one-sided. And it is not the proper function of an appellate court to manufacture findings that the trial court did not make. *See Jesus M.*, 203 Ariz. at 282, ¶ 13 ("Whether severance is in the child's best interests is a question of fact for the juvenile court to determine.").

## CONCLUSION

**¶16** For the foregoing reasons, we remand to the juvenile court to make specific findings concerning the best interests of Child.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

2 DCS contends that Mother waived her objections to the findings by not raising them in the juvenile court. We reject this argument. The duties imposed on the court by statute are self-executing and do not require affirmative invocation by litigants.