NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TASHA T., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.T., G.T., S.T., S.T., C.T., *Appellees.*

No. 1 CA-JV 16-0300
FILED 4-18-2017

Appeal from the Superior Court in Yuma County
Nos. S1400JD20130366, S1400JD20130367, S1400JD20130368,
S1400JD20130369, S1400JD20130370
The Honorable Mark Wayne Reeves, Judge

**AFFIRMED**

COUNSEL

Yuma County Legal Defender's Office, Yuma
By William P. Katz
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

_____

**B E E N E**, Judge:

¶1   Tasha T. ("Mother") appeals an order terminating her parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2   Mother is the biological parent of C.T.T., S.A.T., S.T.T., G.R.T., and C.J.T. ("Children"). In August 2013, Mother was arrested for shoplifting. Following Mother's arrest, the Department of Child Safety ("DCS") alleged, in its dependency petition, that Mother's incarceration and drug–seeking behavior caused her to neglect Children. Mother did not contest the petition, and in September 2013, Children were adjudicated dependent. In May 2014, Mother was sentenced to six months' imprisonment for charges stemming from her August 2013 arrest. As a result of Mother's imprisonment, DCS took custody of Children, and placed them in foster care, where they remained until Mother's parental rights were terminated. Mother was incarcerated from May 2014 to October 2014.

¶3   Upon her release, Mother was offered several services, including substance-abuse assessment and treatment, parenting classes, supervised visitation, and a psychological evaluation. Following a substance-abuse assessment, Mother was referred to outpatient treatment, and while she initially resisted taking part in services, she eventually engaged in treatment, becoming compliant by attending classes in October 2015. Mother did make some progress learning parenting and disciplinary techniques, which she used during supervised visitation. Despite Mother's attempts at discipline, Children were "out of control" during visitation, and they continued to present problematic behavior, including ignoring Mother and hitting each other.

¶4   Mother continued to abuse drugs after her release from prison. She tested positive for methamphetamine four separate times in 2015 and exhibited drug–seeking behavior during two emergency room visits. Mother was arrested again for shoplifting in April and September of

2015. In August 2015, the juvenile court changed the case plan to severance and adoption, and DCS filed its motion to terminate Mother's parental rights, alleging chronic substance-abuse and out-of-home placement grounds. In November 2015, Mother again tested positive for methamphetamine.

¶5        The termination hearing was held over three days, February 26, 2016, and April 19-20, 2016. During the hearing, Dr. Hart, the psychologist who performed Mother's mental health assessment, testified that he refrained from referring Mother to dialectical behavior therapy ("DBT therapy") for treatment of Mother's adverse personality traits. Dr. Hart testified that an unnamed consultant with DCS informed him that services, such as DBT therapy, for mental health traits were not available through DCS. Specifically, Dr. Hart was told to recommend only general cognitive behavior therapy, even if he believed another service would assist his DCS patients with their mental health issues. Dr. Hart was not advised to refrain from recommending intensive drug treatment programs, and did so with respect to Mother.

¶6        After the hearing, the juvenile court terminated Mother's parental rights to Children[1] based on chronic substance abuse, Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) (2017),[2] and out-of-home placement in accordance with A.R.S. § 8-533(B)(8)(a)-(c). Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2017), 12-120.21(A)(1) (2017), and 12-2101(A)(1) (2017).

## DISCUSSION

¶7        The juvenile court may sever parental rights if it finds, by clear and convincing evidence, at least one of the statutory grounds set forth in A.R.S. § 8–533, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and by a preponderance of the evidence that severance is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). "On review . . . we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). Accordingly, we address Mother's

---

[1]        The parental rights of Children's fathers were also terminated, but are not subject to this appeal.

[2]        Absent material revision after the relevant date, we cite a statute's current version.

arguments "view[ing] the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**¶8** The juvenile court terminated Mother's parental rights to Children pursuant to A.R.S. § 8–533(B)(3), after finding she was unable to fulfill her parental responsibilities because of a history of chronic substance abuse, and that the condition was likely to continue for a prolonged, indeterminate period. The juvenile court also found severance was in Children's best interests because termination of parental rights would allow Children to be adopted, and because a continuation of the parent-child relationship would delay permanent adoption, leaving Children without parents who were capable of caring for them.

**¶9** On appeal, Mother raises three issues. First, she argues that DCS violated Rule 44 of the Arizona Rules of Procedure for the Juvenile Court, and her Due Process rights as set forth in Art. 2 § 4 of the Arizona Constitution, and the Fifth and Fourteenth Amendment to the United States Constitution by failing to timely disclose Dr. Hart's testimony about DBT therapy and the results of two drug tests. Second, Mother claims DCS failed to make reasonable efforts to provide reunification services by prohibiting Dr. Hart from recommending DBT therapy. Finally, Mother argues that there is insufficient evidence to show severing her parental rights is in the best interests of Children.

## I. Alleged Disclosure, Due Process and Evidentiary Violations

**¶10** Mother claims her Due Process rights were violated when DCS failed to timely disclose relevant evidence in accordance with Rule 44 of the Arizona Rules of Procedure for the Juvenile Court.

**¶11** A trial court has broad discretion in ruling on disclosure and discovery matters, and this Court will not disturb such a ruling absent an abuse of discretion. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013). In reviewing for an abuse of discretion, "[t]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985) (citation omitted). We do not substitute our discretion for that of the trial court. *Id.*

**¶12** Mother first argues that Dr. Hart's testimony regarding DBT therapy was not disclosed prior to the hearing, and that pursuant to Arizona Rules of Procedure for the Juvenile Courts 44, she was "entitled to

know this policy or systemic issue described by Dr. Hart." The superior court did not abuse its discretion by receiving Dr. Hart's testimony. Rule 44(B)(2)(d) requires that each party disclose all of its witnesses, along with a "description of the substance of the witness's expected testimony." DCS's disclosure stated that Dr. Hart would testify to "the psychological evaluation of the parents, including opinions, conclusions, *recommendations* and observations, and any other relevant matters." (emphasis added). Dr. Hart's opinion that Mother would benefit from DBT therapy, and DCS' alleged policy/practice preventing him from giving that recommendation, are well within the description of his testimony that DCS disclosed before trial. Furthermore, Mother does not show she was harmed by the asserted lack of disclosure, nor does she develop an argument demonstrating how her Due Process rights were violated by DCS' alleged failure to disclose. The juvenile court did not abuse its discretion by allowing Dr. Hart's testimony on DBT therapy.

**¶13** Mother next claims that two positive drug tests, dated February 24, 2016 and March 2, 2016, were improperly admitted in evidence because the termination hearing had commenced on February 26, 2016, and the test results were not disclosed 10 days prior to the hearing as required by Rule 44(F). DCS received the drug test results on March 28, 2016 and disclosed them to all parties via e-mail on March 29, 2016. DCS then filed the exhibits with the juvenile court on April 5, 2016, fourteen days before the second day of trial. Mother objected at trial, and the juvenile court considered and overruled her objection. The juvenile court was in the best position to determine whether the late disclosure and filing of the test results prejudiced Mother, and it did not abuse its discretion by allowing the exhibits. *See Zimmerman v. Shakman*, 204 Ariz. 231, 236, ¶16 (App. 2003) ("[T]he trial judge possesses considerable latitude in determining whether good cause has been shown for late disclosure[.]").

## II. Alleged Failure of DCS to Provide DBT Therapy

**¶14** Mother argues that because DCS counseled Dr. Hart not to recommend specific services, specifically DBT therapy, DCS failed to make reasonable efforts to reunify Mother's family.

**¶15** Termination on substance abuse grounds, § 8-533(B)(3), requires a finding that "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs" and that "there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Additionally, because custody of one's natural children is a fundamental right, the state must

demonstrate by clear and convincing evidence that it has made reasonable efforts to preserve the family. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (termination of parental rights pursuant to § 8-533(B)(3) requires finding of reasonable effort to preserve family); *see also Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

¶16    Mother's argument that termination was improper because DCS failed to provide her DBT therapy is unavailing in light of evidence showing she failed to respond to treatment for substance abuse. Although DBT therapy may have been an appropriate option for addressing Mother's problematic personality traits, Dr. Hart testified that Mother would have to maintain sobriety for three to six months before DBT therapy would be effective. Mother was provided intensive substance abuse treatment, but although she availed herself of some services, Mother's ongoing positive drug tests, including a positive test for opioids during the termination proceeding, showed she could not maintain her sobriety. DCS is not required to provide every conceivable service, but must provide services that have a "reasonable prospect of success." *Mary Ellen C.*, 193 Ariz. at 192, ¶¶ 34, 37. Given the numerous services DCS provided Mother and the evidence that DBT therapy would not have succeeded until Mother had demonstrated sustained sobriety, there is sufficient evidence that DCS had satisfied its obligation to make reasonable efforts to preserve the family.

### III.    Reasonable Evidence Shows Termination Is in Children's Best Interests

¶17    Mother argues there is insufficient evidence to support a finding that termination of her parental rights would be in the best interests of Children. She argues Children demonstrate behavioral problems in their foster placements that persist despite separation from Mother, and there is no evidence severance will reduce these behaviors. Contrary to Mother's argument, the DCS specialist assigned to the case testified that Children's behavior developed in part from their continuing relationship with Mother and uncertainty about the future. The specialist further testified that Children deserve a chance to understand who their permanent parents are, and that ongoing visitation has caused their behavior to regress. There is sufficient evidence for the juvenile court to find termination is in the best interests of the Children, because it would further the plan of adoption, and because failing to sever Mother's parental rights would delay permanency and leave Children to languish in state care.

**CONCLUSION**

**¶18**        For the aforementioned reasons, the juvenile court's order terminating Mother's parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA