NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WALTER C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.C., *Appellees*.

No. 1 CA-JV 21-0089
FILED 9-21-2021

Appeal from the Superior Court in Maricopa County
No.  JD 528573
The Honorable Kristin Culbertson, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Higley
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**B R O W N**, Judge:

¶1          Walter C. ("Father") appeals the juvenile court's order terminating his parental rights to his son, J.C., born in 2018.  Father argues the court erred in finding the Department of Child Safety ("DCS") made reasonable efforts to reunify the family.  Because reasonable evidence supports the court's decision, we affirm.

## BACKGROUND

¶2          Father and Amanda D. ("Mother") are J.C.'s biological parents.  Mother is not a party to this appeal.  J.C. was born substance exposed, and Mother admitted to using methamphetamine ("meth") while pregnant.  Father admitted he had recently used marijuana and cocaine.  He then submitted to a hair follicle test and tested positive for cocaine and meth. Given both parents' drug use, DCS took J.C. into care and placed him with a family member.  DCS petitioned for dependency, alleging Father was unable to parent J.C. due to substance abuse.  Father did not contest the petition and the court adjudicated J.C. dependent, setting the case plan for reunification.

¶3          DCS offered Father a variety of services, including substance-abuse treatment, psychological consultations and evaluations, paternity testing, parent-aide services, and supervised visitation.  In June 2018, Father completed a substance-abuse assessment with TERROS and was enrolled in standard outpatient treatment.  Over the next six months, he failed to attend any individual treatment sessions, did not consistently attend group sessions, minimized his substance-abuse issues, and missed roughly half of his call-ins for drug testing.  When he did participate in testing, Father repeatedly tested positive for marijuana, although it is unclear whether he had a medical marijuana card at this time.  In August, Father was arrested on domestic-violence charges for allegedly assaulting Mother.  Father later stated he was high on marijuana at the time of the incident.  He tested positive for cocaine in September and again in November.

2

¶4      In January 2019, Father reported he was no longer using cocaine, and he now had a valid medical marijuana card. Father initially showed better engagement with substance-abuse treatment. By March, however, he began missing group sessions and was late when he did attend. In April, he missed over half of his call-ins for drug testing, and the pattern continued over the next six months. In May, TERROS warned Father he would be dropped from the program if his attendance did not improve. Father re-engaged and improved his attendance. But in August, he relapsed on cocaine and tested positive for the next two months. Father also failed to consistently participate in his group sessions. In late October, he was elevated to intensive out-patient care.

¶5      Meanwhile, in July 2019 Father participated in a psychological evaluation. The psychologist recommended Father receive doctoral- or master-level therapy. In September 2019, the court ordered DCS to refer Father to individual counseling with a domestic-violence component. The same day, Father self-referred to The Potter's House ("TPH"), a substance abuse treatment center. The provider diagnosed Father with "[i]ntermittent explosive disorder" and enrolled him in domestic-violence treatment. Father began attending the domestic-violence group sessions, but was ultimately closed out of the program for lack of attendance by November 2019.

¶6      In October 2019, Father pled guilty to the domestic-violence charges and was sentenced to three months in jail and three years' probation. Father reported to jail the following month to begin his term. Father continued to attend substance-abuse treatment while on work release until he lost the privilege and was closed out of treatment because he could no longer attend due to his incarceration.

¶7      In December 2019, the juvenile court again ordered DCS to refer Father for domestic-violence counseling. Father was released from the jail later that month, and DCS referred Father back to TPH, where Father re-enrolled in domestic-violence classes. DCS requested that TPH provide Father with individualized, master's-level counseling. TPH agreed, and enrolled Father in individualized counseling, together with the group sessions he was already attending. DCS also referred Father back to TERROS so he could resume substance-abuse treatment. After a second intake, Father again tested positive for cocaine and TERROS recommended intensive outpatient treatment. For the next few months, Father attended most of his appointments with TERROS and TPH, actively participated in treatment, was compliant with drug testing, and consistently tested

negative for all substances.  In May, however, Father twice tested positive for cocaine.

**¶8**          In June 2020, DCS moved to terminate Father's parental rights based on substance abuse and 15 months' time-in-care.   Father continued to participate in services through TPH and TERROS, but his attendance began to wane.  In June, Father again began to miss a significant number of call-ins for testing, a pattern that continued over the next several months.  In July, Father tested positive for cocaine, amphetamine, and meth.   He again tested positive for cocaine the following month.  In September, he was discharged from TPH due to excessive absences.  Father's attendance with substance-abuse treatment remained more consistent, and he was transferred to recovery and maintenance services around November or December 2020, although he continued to miss several call-ins for drug testing, including about 25% of his call-ins during October.

**¶9**          A two-day termination hearing was held in December 2020 and January 2021.  DCS case manager Monica Sandoval explained that the case was transferred to her about two and a half months before the hearing.  She testified about Father's persistent substance-abuse problems, explaining that DCS remained concerned that after two and a half years, Father had still not demonstrated any insight or accountability for his substance abuse and the risks it poses to J.C.  Sandoval acknowledged that Father's drug testing account was suspended during the month of December 2020 and conceded DCS was at fault for Father's inability to test during that time.  Sandoval also testified she did not review all of the juvenile court's orders issued in the case, including orders from September 2018 and December 2019, requiring DCS to refer Father to domestic-violence counseling.  Sandoval then agreed that Father had self-referred to TPH for domestic-violence counseling.  She conceded that these apparent oversights did not represent diligent efforts on DCS's part.

**¶10**          Nevertheless, the juvenile court found that DCS proved by clear and convincing evidence the substance-abuse ground and that termination was in J.C.'s best interests.  The court also found that DCS made reasonable efforts to reunify the family but declined to address whether DCS met its burden on the time-in-care ground.  In reaching its decision, the court explained that it found neither Sandoval nor Father credible and instead relied heavily on the documentary exhibits.   Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶11**        To terminate parental rights, the juvenile court must find (1) one of the statutory grounds articulated in A.R.S. § 8–533(B), by clear and convincing evidence; and (2) that termination is in the child's best interests, by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We view the evidence in the light most favorable to sustaining the court's ruling and will affirm if supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

**¶12**        As pertinent here, to terminate Father's parental rights, A.R.S. § 8-533(B)(3) required DCS to prove he (1) has a history of chronic abuse of controlled substances, (2) was unable to discharge parental responsibilities because of the abuse, and (3) reasonable grounds exist to believe the condition will continue for a prolonged and indeterminate period. DCS also had to show it made "reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). DCS satisfies its obligation to make reunification efforts by providing the parent with "the time and opportunity to participate in programs designed to help [him] become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

**¶13**        Father's sole argument on appeal is that the juvenile court abused its discretion in finding that DCS made reasonable efforts to reunify the family. He contends that because Sandoval testified at trial that DCS had failed to provide certain services to Father, DCS had fallen short of making reasonable efforts. Father asserts that given Sandoval's concession in light of DCS's burden of proof, the court should have been "allowed to disregard that evidence and proceed with the termination orders."

**¶14**        The juvenile court, however, was not required to adopt Sandoval's testimony concerning her view of whether DCS made diligent efforts in two specific areas: the December 2020 drug testing and domestic-violence referral. *See DePasquale v. Superior Court*, 181 Ariz. 333, 336 (App. 1995) (trial court must not "abdicate its responsibility to exercise independent judgment"). Although the court did not find Sandoval credible, it relied instead on the documentary evidence provided by the parties. Doing so was within the court's discretion, as "judging the credibility of witnesses and resolving conflicts in testimony are uniquely the province of the trial court." *In re David H.*, 192 Ariz. 459, 461, ¶ 8 (App. 1998). Thus, the court did not err in accepting a position contrary to

Sandoval's so long as its decision is supported by reasonable evidence. *See Jordan C.*, 223 Ariz. at 93, ¶ 18.

¶15 Moreover, the few weeks that Father was unable to participate in drug testing in December 2020 are inconsequential when compared to the 18 months of drug testing and counseling services DCS provided. *See Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 26, ¶ 68 (App. 2019) (explaining that when judging diligent efforts, the superior court looks to the "totality of the circumstances"). And contrary to Sandoval's testimony at trial, the documentation admitted at the termination hearing shows DCS did assist Father in obtaining domestic-violence counseling. Regardless, it is undisputed that Father received that service. *See Matter of Pima Cnty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989) (holding that DCS is not required provide services that are already being received).

¶16 Father also objects to the juvenile court's reliance on the documentary record. He notes that "many of the exhibits contained information generated by DCS, whose sole spokesperson at trial had been deemed to lack credibility by the trial judge." But Father does not challenge the veracity of any of the documentary exhibits admitted into evidence without objection. Father further contends that "[g]iven the lack of specificity as to what documentation the court relied upon and to what extent," the court abused its discretion. He cites no authority, however, requiring a court to specifically cite every piece of evidence upon which it relied. Rather, in a termination proceeding, the juvenile court's obligation is to specify the conclusions of law and include at least one factual finding that provides sufficient support for each of those conclusions. *Ruben M. v. Ariz. Dep't. of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 22 (2012). Here, the court carefully documented the services provided, including substance-abuse assessment and treatment, individual substance-abuse counseling, substance-abuse testing, psychological evaluation, parent-aide services, and supervised visits. Father does not dispute the accuracy of the court's findings. Thus, the record supports the court's conclusion that DCS made reasonable reunification efforts.

**CONCLUSION**

¶17 For the foregoing reasons, we affirm the juvenile court's termination order.



AMY M. WOOD • Clerk of the Court
FILED: AA