NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WILLIE W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.W., E.W., R.W., *Appellees*.

No. 1 CA-JV 15-0375
FILED 9-13-2016

Appeal from the Superior Court in Maricopa County
No. JD511098
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Patricia A. Orozco and Judge Jon W. Thompson joined.

S W A N N, Judge:

¶1 Willie W. ("Father") appeals the termination of his parental rights for J.W., E.W., and R.W. He contends that the state failed to present sufficient evidence to support severance based on the grounds that the children were out of his care for fifteen consecutive months. He also contends that the Department of Child Safety ("the Department")[1] did not make reasonable efforts to preserve his family and failed to provide adequate reunification services. Finally, he asserts that the trial court erred in finding that severance was in the best interests of the children.

## FACTS AND PROCEDURAL HISTORY

¶2 The Department removed two children from Father and Mother's[2] custody in May 2013 and removed the third immediately after her birth in July 2013, and the court found the children dependent as to both parents. In December 2014, the Department moved to change the case plan to severance, alleging the children had been in an out-of-home placement for fifteen or more months pursuant to a court order. At the severance hearing, the issue was primarily whether the Department had provided adequate services and made reasonable efforts to reunite the family. The following evidence was presented at the severance hearing.

---

[1] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. For convenience, in the text of our decision we refer to both the Department of Child Safety and the Arizona Department of Economic Security as "the Department."

[2] Mother also had her parental rights terminated on the grounds that the children had been in an out-of-home placement for fifteen months and that mental illness or mental deficiency prevents her from caring for the children. She is not a party to this appeal.

**¶3**          Father has a long history of substance and alcohol abuse and has had convictions for drug-related offenses. The parents had prior contact with the Department for allegations of neglect and abuse of J.W. and neglect of E.W., though previous reports were largely unsubstantiated. In 2011, Mother and J.W. were hit by a vehicle while they were crossing the street and suffered traumatic brain injuries. Both J.W. and Mother experienced ongoing cognitive issues from the accident, and Mother was no longer able to parent the children independently. They received an award from the case arising from the accident that pays for their care. Father became the primary caretaker for Mother. But he had difficulty acknowledging that Mother was not capable of becoming independent after the accident.

**¶4**          In May 2013, Father ran into a parked car while he was driving under the influence of alcohol with his two older children in the car. Because the Department believed Mother was unable to care for the children independently, the children were temporarily placed in the Department's custody. The Department petitioned the court to declare the children dependent, alleging that Father was unable to parent because of neglect, substance abuse and mental health issues.

**¶5**          Mother gave birth to R.W. in July 2013, though neither parent knew that Mother was pregnant until a few weeks before she gave birth. R.W. was immediately removed from her parents, and the Department alleged that the child was dependent as to Father because of substance abuse, neglect and the dependency case for the two older children. The court found all three children dependent as to Father.

**¶6**          The Department referred Father for substance abuse treatment and psychological evaluation. The psychologist opined that Father was overwhelmed with his many responsibilities and had turned to drinking as a means of coping with stress. She reported that if Father "attain[ed] emotional stability and sobriety," his prognosis to be a minimally adequate parent was "guarded to fair." He was referred for individual counseling, but he did not cooperate with the therapists assigned to him and requested to change therapists twice before he was closed out of services for nonparticipation. Father had disagreements with the parent aides during visits with the children, but the final parent-aide report stated that his case was closed because he "has achieved all Behavioral Changes related to safety to address the reasons the children were placed into custody." The Department's caseworker signed the final report, approving the termination, though she then testified at the severance trial that she did not agree with the final report's finding that Father had completed the program. Father was also required to

participate in random drug screenings. According to a Department report, he inconsistently participated in drug testing, but completed a standard outpatient-treatment course for substance abuse.

¶7        In May 2014, Father pleaded guilty to one count of aggravated driving while under the influence of intoxicating liquor. The court suspended his sentence and placed him on three years of probation, though he was required to serve eight months in jail as a condition of probation. While in jail, Father voluntarily participated in anger management and substance abuse classes, but he did not receive the services recommended in the psychological evaluation. The Department caseworker sent update letters to him. Father did not respond in writing or send any letters or cards, but the letters from the Department did not contain the Department's address, and the caseworker was not aware if he received the envelope with the address.[3] Father testified at the severance hearing that he had attempted to call the caseworker but that the caseworker's phone number did not accept collect calls. He did, however, call J.W. and E.W. from jail. The caseworker agreed that the Department did not provide Father with some of the services recommended by the psychologist.

¶8        In December 2014, while Father was still in jail, the Department moved to have parental rights terminated. After Father left jail in January 2015, the Department again referred him for services. He resumed drug testing but was, once again, inconsistent, though he did produce clean test results once a month for many months. Father's substance abuse counselor testified that Father immediately reengaged in counseling after he left jail, and he always informed them when he missed a test. She believed he was not using alcohol. The case aide for home visitations, however, testified that during the October 14, 2015 visit, the parents took beer to the house. The substance abuse counselor testified that did not concern her because Father admitted there was beer in the house and did not try to hide it.

¶9        The Department referred Father for another psychological evaluation, conducted in June 2015 by Dr. Thal. The report recommendations stated that it was "imperative" that Father work with a parent aide to improve his parenting skills and commit to therapy with a

---

[3]        Father testified that he is not comfortable writing and prefers oral communication. A psychological assessment confirmed that Father has low literacy skills. There is no evidence that the Department attempted to accommodate for this.

"doctoral level therapist . . . on a weekly basis," but the psychologist did not think it was likely that Father would become a minimally adequate parent. Dr. Thal later clarified that a therapist with a doctoral degree was not necessary but he recommended a "[person] who usually ha[d] amassed considerable expertise and usually a lot of credits beyond [his] masters." The caseworker testified that Father was "offered" counseling but the Department did not refer him because he had "refused." Father was finally referred for individual counseling in May at the request of his counsel but was not assigned a therapist until August. But in spite of the psychologist's recommendation, the Department referred Father to a masters-level therapist and did not provide instruction by a parent aide.

¶10    At the initial severance hearing in January 2015, the court ordered therapeutic visitation with R.W. to resume, and at a pre-trial conference in February the court again ordered therapeutic visits with R.W. The Department did not comply; in a minute entry from May, the court ordered the Department to "provide a written explanation as to why the order of 1/26/2015 was not complied with" and to provide parents and counsel a therapy session schedule for the next 90 days. Almost three months after the Department reinstated therapeutic visitation, it moved the court to suspend the visitations because "Father lacks impulse control and his behaviors have become unpredictable." In particular, the therapist supervising visitation stated in a letter to the caseworker that Father had been "exhibiting some hostile behavior toward [the] therapist and the office manager." The court, however, denied the motion and expected visits to resume. At the severance hearing in September 2015, the court questioned the Department's counsel about why the visits had not resumed and was informed that in spite of the court's order, the current therapist refused to see Father, requiring the Department to submit another referral.

¶11    At the hearing, Father's attorney informed the court that the Department had not timely provided her with all the records it intended to introduce into evidence. And the caseworker admitted that she possibly had not documented all her contacts with Father, though the Department policy required it. The court expressed uncertainty about whether the Department had provided Father with reasonable reunification services. Nevertheless, the court found that the Department had shown by clear and convincing evidence that the children had been in an out-of-home placement for fifteen months and that by a preponderance of the evidence, termination was in the best interests of the children. The court ordered parental rights terminated. Father appeals.

**DISCUSSION**

¶12        To sever parental rights, the court must find clear and convincing evidence of at least one statutory ground for severance, and that a preponderance of the evidence shows that severance is in the best interests of the child.  A.R.S. § 8-533(B); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).  The court's order must articulate specific findings of fact to support the severance.  A.R.S. § 8-538(A); Ariz. R.P. Juv. Ct. 66(F)(2)(a).  We accept the court's findings of fact unless they are not supported by any reasonable evidence, and we will affirm the severance order unless it is clearly erroneous.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

I.        THE TRIAL COURT DID NOT ERR IN FINDING THAT SEVERANCE WAS IN THE BEST INTERESTS OF THE CHILDREN.

¶13        The best-interests determination must explain "how the [children] would benefit from a severance *or* be harmed by the continuation of the relationship."  *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (citation omitted).  The court may consider factors such as whether an adoptive placement is immediately available and whether an existing placement is meeting the children's needs.  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

¶14        Father contends that the court erred in finding that severance was in the best interests of the children; we disagree.  The court found that the children's current placements were meeting their needs, particularly for J.W. who has special needs arising from the 2011 accident.  Additionally, R.W. is placed in an adoptive placement.  This case has been ongoing for nearly three years at this point, and as the court stated in its order, "[t]he children have the right to a safe, stable and permanent home where all of their needs are met."

II.        THE COURT DID NOT ERR IN FINDING THE STATUTORY GROUNDS FOR TERMINATION.

¶15        The Department alleged that the children had been in an out-of-home placement for a cumulative period of fifteen months or longer, that Father had been unable to remedy the circumstances necessitating the out-of-home placement, and that there is a substantial likelihood that Father will not be capable of exercising proper and effective parental care and control in the near future.  *See* A.R.S. § 8-

533(B)(8)(c).  It also alleged that Father was offered drug testing, substance abuse assessment and treatment, a parent aide, psychological assessment, visitation with the children and transportation.[4]

**¶16**     Father contends both that the trial court erred in finding that his children were in an out-of-home placement for fifteen months or longer and that the Department did not make reasonable efforts to unify the family.  It is undisputed that the children have been out of the parents' home for more than fifteen months pursuant to a court order, but there is some question about whether the Department has provided adequate services to Father.  It has failed to implement some services recommended by the psychologists, and failed to follow a court order.  Dr. Thal's psychological assessment recommended parent-aide services and that Father see a doctoral-level therapist.  But the Department provided neither parent-aide instruction nor a doctoral-level therapist, even though the caseworker testified that she did not agree that Father had successfully completed parent-aide services.  Several therapists involved in Father's case recommended individual psychotherapy to help Father control his anger and impulsive outbursts, but the Department did not refer Father for any therapy to address this issue until May 2015.  Father testified in September that the therapist had not contacted him yet.  Furthermore, the Department failed to comply with a court order to provide Father with therapeutic visitation with R.W. for nearly five months.  Only after the court asked for a written explanation did the Department comply, and then it promptly moved to terminate visits again.  When the court denied the motion, the Department again failed to implement therapeutic visitation.  The Department argues that we do not need to examine if it provided adequate services because its "efforts would have been futile" and characterizes its actions as "diligent effort."

**¶17**     It is true that the Department is not required to offer reunification efforts if they would be futile.  *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).  With the exception of substance abuse counseling, Father only began to substantially participate after he was released from jail in January 2015.  By that time, the children had already been out of his care for more than fifteen months.  Additionally, Dr. Thal testified that Father's progress was very slow: "Let['s] say he's benefited [from services], but the benefit has come so slowly and the cost has been the children lingering . . . day after day,

---

[4]     On at least one occasion, the Department failed to provide Father transportation for a visitation.

month after month, year after year in an out-of-home placement and their lives being in this suspended situation." He ultimately concluded that Father was "not able to parent independently at this point in time," and that was not likely to change in the near future. We cannot say based on the record here whether Father would have benefited from more intervention, but the Department should have timely referred Father for all recommended and ordered services after his release from jail before concluding that such interventions were futile.

¶18 The failure by the Department to obey court orders is not a phenomenon we take lightly. But to fashion an effective remedy, a party must seek relief promptly. The court here would have granted a motion to compel the Department to implement services had Father timely submitted the motion, and its failure to do so may well have warranted relief by way of special action. Though the Department's performance in this case was imperfect, we cannot on this record alter the result at this juncture.

**CONCLUSION**

¶19 For the foregoing reasons, we affirm the order terminating Father's parental rights.

