NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEFFREY W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.W., *Appellees.*

No. 1 CA-JV 20-0350
FILED 6-29-2021

Appeal from the Superior Court in Yavapai County
No.  P1300JD202000001
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Brian Y. Furuya joined.

**C A T T A N I**, Judge:

**¶1**        Jeffrey W. ("Father") appeals the superior court's order terminating his parental rights to his son J.W.[1]  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Father is the biological parent of J.W., born in August 2019. After J.W.'s birth, hospital staff reported to the Arizona Department of Child Safety ("DCS") that J.W. had tested positive for illegal drugs.  At the hospital, J.W.'s mother admitted to using non-prescribed opiates during her pregnancy.   DCS then interviewed Father, and he admitted using marijuana—but indicated he had a medical marijuana card—and being on a suboxone program.

**¶3**        After J.W. was discharged from the hospital, DCS initiated a safety plan and provided services, including drug testing and in-home visits from social services.  But during the following three months, Father acted aggressively toward in-home care personnel and refused to submit to drug tests.

**¶4**        In December 2019, J.W.'s mother tested positive for methamphetamine and heroin.  DCS became concerned that Father was also using drugs, and when a DCS specialist visited the home, Father fell asleep standing up while talking to the specialist.  DCS requested Father submit to a drug test, but he refused.  After Father's refusal, DCS took J.W. into care.

**¶5**        DCS then petitioned the court to find J.W. dependent as to Father, and after Father pled no contest, the court adjudicated J.W. dependent in January 2020. Following the adjudication, the court adopted concurrent case plans of family reunification and severance and adoption.

---

[1]        J.W.'s mother's parental rights were also terminated, but she is not a party to this appeal.

DCS offered Father services, including substance abuse assessment, behavioral health intake and classes, counseling, anger management education, supervised visitation (including transportation to visits), and parenting classes.

¶6 From January to May 2020, Father participated sporadically in services. He submitted to one hair follicle drug test that was positive for morphine, cocaine, THC, methamphetamine, amphetamine, and heroin. Instead of the eight to ten urine drug tests per month that DCS required, he submitted to only four—of which two were positive for methamphetamine and amphetamine. He participated in the intake for behavioral health counseling and attended one session of individual counseling but did not participate in any classes beyond that. Father never registered for parenting classes, and he missed many visitations with J.W., stating various excuses, including that he was busy, he forgot, or that he did not like the case aide.

¶7 In May 2020, Father was arrested for ten methamphetamine-, fentanyl-, and heroin-related offenses. Father rejected a plea offer of 10 years in prison and is facing 20 to 25 years' imprisonment if convicted. Following Father's arrest, DCS informed Father about drug classes in jail. But Father was subsequently charged with attempting to smuggle contraband (fentanyl) into the jail, and as a result, he was unable to participate in those classes.

¶8 In June 2020, the court changed the case plan to severance and adoption, and DCS moved to sever parental rights on grounds of chronic substances abuse and six-months' time-in-care. *See* A.R.S. §§ 8-533(B)(3), (8)(b). Following a contested severance trial, the superior court severed Father's parental rights based on both grounds. Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶9 To terminate parental rights, a superior court must find by clear and convincing evidence at least one statutory ground for severance and by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We will affirm the superior court's order if reasonable evidence supports it, acknowledging that the superior court is in the "best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

**¶10** Father asserts that DCS did not provide adequate reunification services. Severance cannot be based on chronic substance abuse or six months' time-in-care unless DCS first provides services to attempt to reunify the family. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (requiring DCS to make reasonable efforts to reunify the family under A.R.S. § 8-533(B)(3)); A.R.S. § 8-533(B)(8)(b) (requiring DCS make "a diligent effort to provide appropriate reunification services" to the parent). In assessing whether DCS has made adequate efforts to reunify the family, the court looks to the totality of the circumstances, including the services DCS offered throughout the dependency and the parent's participation in those services. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 22–23, ¶¶ 48, 49 (App. 2019). DCS need not provide "every conceivable service" or those that would prove futile. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (citation omitted); *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Instead, DCS fulfills its obligation when it provides a parent with the time and opportunity to participate in services that have a "reasonable prospect of success." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34.

**¶11** Father argues that DCS did not provide adequate reunification services after his incarceration. Even though Father did not contest services in the superior court and has arguably waived this challenge on appeal, *see Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014), we address his argument and conclude that the evidence supports a finding that DCS provided adequate reunification services.

**¶12** Although Father argues that post-incarceration services were inadequate, his argument does not acknowledge his failure to participate in the services throughout the dependency and DCS's efforts throughout the dependency. During the dependency, Father missed visitations with J.W., failed to participate in counseling, and refused to submit to drug testing. And when Father did submit to drug tests, he tested positive for illegal substances. Further, when Father was incarcerated, DCS made him aware of substance abuse classes in the jail. But his behavior (bringing fentanyl into the jail) rendered him unable to participate in those services. Thus, the superior court did not abuse its discretion by concluding that Father failed to participate in services and that the services DCS provided were adequate. *Cf. Jordan C.*, 223 Ariz. at 93, ¶ 17 (noting the severance statutes allow the court to consider the parent's participation when assessing the adequacy of the services DCS provided).

**CONCLUSION**

¶13      The superior court's order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA