NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

EASTER D.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, S.T.,
*Appellees*.

No. 1 CA-JV 21-0071
FILED 9-28-2021

Appeal from the Superior Court in Maricopa County
No. JD12719
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge David B. Gass joined.

---

**M O R S E**, Judge:

¶1        Easter D. ("Mother") appeals the superior court's order terminating her parental rights to S.T.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mother and Sonny T. ("Father") are the biological parents of S.T. ("Child"), born in October 2019.  Mother has an extensive history with the Department of Child Safety ("DCS") going back to 2003.  Mother's parental rights have been terminated to nine other children because of her substance abuse and mental-health issues.

¶3        In October 2019, DCS received a report that Mother tested positive for cocaine seven times during her pregnancy and the Child was born exposed to cocaine.  Mother admitted smoking cocaine twice during the pregnancy.  The Department took custody of the Child, placed him with a family that had adopted one of his biological siblings, and filed a dependency petition.  In December 2019, the juvenile court found the Child dependent and set a case plan of family reunification.

¶4        DCS offered Mother numerous services throughout the dependency, including weekly supervised visits, parent-aide services, a psychological evaluation, counseling, substance-abuse treatment at Terros (a drug treatment program), and substance-abuse testing.

¶5        Dr. Al Silberman conducted a psychological evaluation with Mother in January 2020.  He noted diagnoses for PTSD, bipolar, anxiety, and depression.  He also noted that Mother denied using substances and she was "unable to recognize how her drug use affects her children."  Dr. Silberman recommended counseling, and treatment for her substance abuse and PTSD.  He also recommended a psychiatric evaluation once Mother was substance free for at least three months.  Dr. Silberman indicated a poor prognosis for Mother to be able to parent the Child safely in the foreseeable future.

¶6          DCS referred Mother to Terros twice before she attended an intake in January 2020.  The evaluator diagnosed Mother with cocaine use with mood disorder, adjustment disorder with mixed anxiety, and depressed mood.  The evaluator recommended a treatment plan, but Mother failed to attend any group sessions in January, tested positive for cocaine three times, and missed her medication-management appointment.  Mother also failed to attend a February treatment session, despite receiving transportation services.  When a Terros counselor contacted Mother to reschedule, Mother hung up the phone.  Because it was Mother's third consecutive missed appointment, Terros sent a ten-day closure letter.  Mother did not respond and was closed out in March for lack of engagement.

¶7          In July, DCS referred Mother to Terros for a third time, but Mother failed to complete the intake procedure.  In September, DCS referred Mother to Terros for a fourth time, but she did not complete the intake until November.  Mother attended some group sessions but tested positive for cocaine twice in December.  Terros closed out Mother's referral after she declined further services.

¶8          Between March and May, Mother completed only ten of twenty visits with the Child and five of twenty skills sessions with the parent aide.  The parent-aide referral unsuccessfully closed in June 2020.  Mother inconsistently visited with the Child during the remainder of 2020.

¶9          In August 2020, the court changed the case plan to termination and adoption, and DCS moved to terminate Mother's parental rights on the grounds of chronic substance abuse and six-months in an out-of-home placement.  The juvenile court held a four-day trial in February 2021.  It heard testimony from Mother, Father, the DCS caseworker, and Dr. Silberman.

¶10          During her testimony, Mother admitted using cocaine while she was pregnant with the Child and that she understood it was dangerous for the baby, but she minimized the need to address her substance abuse.  During the dependency, Mother took only eleven of seventy-six scheduled drug tests, and tested positive for cocaine seven times.  Dr. Silberman testified that the primary concern was Mother's substance abuse, which needed to be addressed before dealing with her other issues.  He also testified that Mother is bipolar with psychosis and has below-average intelligence, but is not mentally handicapped or developmentally disabled.  Dr. Silberman noted that Mother's regression after receiving substance-abuse services had "nothing to do with her intelligence."  He concluded that

even if Mother completed all the recommended services, he would remain "concerned because she's had such a long history and lost so many other children." The DCS caseworker testified that the main concern with Mother's parenting was her substance abuse, and that Mother had failed to demonstrate enough sobriety to reunify her with the Child.

¶11        In February 2021, the juvenile court granted DCS's termination motion on the substance-abuse ground but not the out-of-home placement ground. The court found that DCS made reasonable reunification efforts and "appropriate reasonable accommodations." The court noted that (1) Mother only minimally engaged in substance-abuse testing and treatment; (2) Mother failed to attend numerous parent-aide appointments despite the parent aide's effort to find locations close to Mother's residence; (3) DCS provided Mother with transportation services; and (4) DCS attempted to obtain a new phone for Mother. Although the court stated that DCS "could have done more," the court concluded that Mother's "failure to participate fully with Terros and her parent-aide left [DCS] unable to assist her further."

¶12        Mother timely appealed. The juvenile court also terminated Father's parental rights, but he is not a party to this appeal. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶13        A parent's right to custody and control of her child is fundamental, but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). The juvenile court may terminate a parent's rights if it finds, "by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533," and by a preponderance of the evidence that termination is in the child's best interests. *Id.* at ¶ 12; Ariz. R.P. Juv. Ct. 66(C). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted). We review a termination order for an abuse of discretion and will affirm the order unless "there is no reasonable evidence" to support the decision. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citation omitted).

¶14        The juvenile court may terminate parental rights if the parent has a history of chronic substance abuse, is unable to discharge parental responsibilities due to chronic substance abuse, and reasonable grounds exist to believe that the abuse will continue for a prolonged and

indeterminate period.  A.R.S. § 8-533(B)(3); *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010).  When seeking termination under the substance-abuse ground, DCS is required to make reasonable efforts to provide the parent with appropriate reunification services.  *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).  DCS meets its obligation by providing the parent with "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  DCS, however, is only obligated to provide services that have "a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

**¶15**        Mother does not dispute the statutory ground of substance abuse and that termination is in the Child's best interests.  Instead, Mother argues the juvenile court erred in finding that DCS made a diligent effort to reunify Mother with her child.

**¶16**        First, Mother disputes the juvenile court's finding that she failed to participate fully with Terros, asserting that she was "actively participating in Terros services."  But Mother's failure to participate is supported by the record.  Mother failed to participate in intake with Terros for her first referral, and Terros closed Mother out of her second referral after multiple absences.  Mother then failed to use her next referral.  *See Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 423, ¶ 34 (App. 2011) (noting DCS "cannot force a parent to participate in recommended services").  Although Mother's participation improved somewhat after DCS moved to terminate Mother's rights, she continued to test positive for cocaine, missed appointments, and she was no longer active in Terros by the time of trial.  *Cf. Maricopa Cnty. Juv. Action No. JS–501568*, 177 Ariz. 571, 577 (App. 1994) (upholding termination where parent's successful efforts to overcome drug addiction were "too little, too late").

**¶17**        Mother blames her minimal participation on accessibility issues.  But the record reveals DCS made numerous attempts to accommodate Mother.  *See Vanessa H. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 252, 256, ¶ 20 (App. 2007) (viewing "reasonable accommodations as a component of making 'reasonable efforts'").  DCS's efforts included attempting to reschedule sessions and providing transportation.  When Mother told DCS her limited mobility made riding the bus difficult, DCS provided Mother taxi services.  The DCS caseworker testified that after Mother pawned her phone, she attempted "to help [Mother] get a phone." But "[b]y the time that [she] figured out how to do that . . . [Mother] already had a phone again."  The DCS caseworker also testified that she would

speak to Mother on Father's phone. When asked by her Terros therapist why she failed to call into her drug testing, Mother said that she did not have a reason.

**¶18** Mother also asserts that her lack of participation was because DCS failed to accommodate her disability, specifically that "DCS failed to inform the parent-aide service-provider about Mother's intellectual functioning level." But the record reflects that the parent aide was aware that Mother had mental-health issues. Mother also argues she never received the trauma counseling recommended by Dr. Silberman. But Dr. Silberman testified that Mother needed to address her substance abuse first, and Terros required eight group classes before Mother could start one-on-one trauma counseling. Mother still had not completed this requirement by the time of trial, 14 months after the dependency began. *See Raymond F.*, 224 Ariz. at 378, ¶ 25 (noting that children should not be forced to wait inordinately for a parent to develop necessary parenting skills).

**¶19** Viewing the record in the light most favorable to sustaining the juvenile court's findings, *Jordan C.*, 223 Ariz. at 93, ¶ 18, the court did not abuse its discretion in finding that DCS made reasonable efforts to provide Mother with appropriate reunification services.

## CONCLUSION

**¶20** For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental relationship with the Child.



AMY M. WOOD • Clerk of the Court
FILED: AA