NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS
AS TO A.V., E.V., Z.V., and A.V.

No. 1 CA-JV 23-0068
FILED 10-19-2023

---

Appeal from the Superior Court in Maricopa County
No. JD21835
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge David B. Gass joined.

---

**J A C O B S**, Judge:

¶1        Marshal Brent Van Moorlehem (Father) appeals the juvenile court's termination of his parent-child relationship with four children: ASV, born August 2016; EDV, born March 2018; ZMV, born May 2019; and AGV, born September 2020. We affirm because reasonable evidence supports the court's determination under A.R.S. § 8-533(B)(3) that Father is unable to discharge parental responsibilities because of a history of chronic abuse of dangerous drugs and controlled substances, and there are reasonable grounds to believe this condition will continue for a prolonged indeterminate period, and its ruling that termination is in the children's best interests under A.R.S. § 8-533(B).

### FACTS AND PROCEDURAL HISTORY

¶2        On October 13, 2020, DCS filed a dependency petition alleging Father and Mother had histories of methamphetamine use and were unable to parent the children. DCS petitioned for an in-home dependency and placed the children with their maternal grandmother.

¶3        DCS had been involved with the family four years earlier and temporarily removed one child from Father's care because of substance abuse. After Father participated in rehabilitative services, the juvenile court, which had found the child dependent, dismissed that dependency case.

¶4        Throughout the instant dependency proceedings, Father continued to use dangerous drugs. Father tested positive for controlled substances in November 2020. Despite agreeing to do so, he did not participate in urinalysis testing or engage with substance abuse treatment offered by DCS. DCS nonetheless allowed Father additional time, until mid-December 2020, to participate in family reunification services. Father was "resistant to engaging in services" and declined to participate. The juvenile court found the children dependent as to Father *in absentia* on February 26, 2021, and allowed his counsel to withdraw.

**¶5** In May 2021, DCS informed the court that Father was incarcerated and faced federal criminal charges. Father eventually pled guilty to drug trafficking offenses he committed in 2019 and 2020. After serving several months for those offenses, Father was released on probation at the beginning of November 2021.

**¶6** No one appeared for Father at dependency proceedings in May, July, and August 2021, and he remained out of contact with DCS after his release.

**¶7** While in prison, Father completed rehabilitative programs, including substance abuse and parenting programs. Unfortunately, he relapsed after release and tested positive for methamphetamine in January and February 2022. DCS moved to remove the children from the custody of maternal grandmother, who also tested positive for methamphetamine and supplied Father with methamphetamine. DCS referred Father for substance abuse treatment and a home visit, and made multiple attempts to engage Father. The referral for services was unsuccessful and closed out a few weeks later. DCS placed the children with two different foster families.

**¶8** On March 30, 2022, DCS moved to terminate Father's parental rights based on his substance abuse and because the children had remained out of Father's care for fifteen months. *See* A.R.S. § 8-533(B)(3), (8)(c). The court appointed counsel for Father, ending a period of over a year during which Father lacked counsel. After multiple continuances, the court held a termination hearing in late January and early February 2023.

**¶9** At the hearing, Father testified to his history of using methamphetamine with repeated relapses starting from age 12 and persisting through his mid-30's. Though Father's urine samples did not test positive for methamphetamine after March 2022, his August 2022 hair follicle sample did. Father maintained he had kept sober since mid-March 2022 when he started participating in services. He explained why he did not attend some testing appointments and his belief that the court could use the probation department testing records. Father also testified about participating in a counseling program two hours per week for nine weeks.

**¶10**         The court found clear and convincing evidence to terminate the parent-child relationship under A.R.S. § 8-533(B)(3), that DCS had made reasonable efforts to provide services to reunify the family, and that termination was in the children's best interests.

**¶11**         Father timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A), 12-120.21(A), and -2101(A).

## DISCUSSION

### I.      Reasonable Evidence and Inferences Support the Juvenile Court's Ruling that Termination Was Warranted Under § 8-533(B)(3).

**¶12**         Father's appeal challenges particular findings of fact, and also the juvenile court's conclusion that sufficient facts supported the juvenile court's conclusion that a statutory ground for termination applied.  As to the findings of fact, he argues he was sober for "months" before the termination adjudication hearing, since March 2022, and "had nearly a year of established sobriety through urinalysis testing."  From that, Father maintains that the juvenile court thus lacked "reasonable grounds to believe" Father's chronic substance abuse "will continue for a prolonged indeterminate period" under A.R.S. § 8-533(B)(3).

**¶13**         This court accepts the juvenile court's factual findings "if reasonable evidence and inferences support them."  *Brionna J. v. Dep't of Child Safety*, 533 P.3d 202, 212 ¶ 46 (2023) (citing *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579-80 ¶ 10 (2021)).  We defer to these findings because "the juvenile court is in the best position to weigh evidence and assess witness credibility."  *Id.*  We review whether sufficient evidence supports the presence of a statutory ground for termination for clear error.  *Brionna J.*, 533 P.3d at 209-10 ¶ 31.  Finally, we will affirm a termination order unless the court abuses its discretion.  *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022).

**¶14**         Terminating parental rights under A.R.S. § 8-533(B) requires: (1) clear and convincing evidence of a statutory ground for termination; and (2) a preponderance of the evidence showing that termination of the relationship is in the child's best interests.  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50 ¶ 8 (2018); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005).

As relevant here under A.R.S. § 8-533(B)(3), the court may terminate a parent-child relationship if it finds clear and convincing evidence that "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."

### A.  Reasonable Evidence Supports the Juvenile Court's Conclusions Concerning Father's Sobriety.

¶15        The juvenile court found that despite DCS' reasonable reunification efforts to "repeatedly refer[] [Father] . . . for urinalysis testing and substance abuse treatment," and "[m]ultiple attempts . . . to engage [Father] in the services, including a home visit and multiple phone calls," he did not participate and had not demonstrated his sobriety for a prolonged period by competent evidence. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453 ¶ 12 (App. 2005) (requiring court finding about DCS's reasonable efforts to reunify).

¶16        The juvenile court considered Father's evidence, testimony, and credibility, and found it lacked "sufficient credible evidence to corroborate or conclude that [Father] has refrained from using methamphetamines since March 2022." *See Jessie D.*, 251 Ariz. at 579-80 ¶ 10 (explaining juvenile court is in the best position to weigh evidence and judge credibility).  In so finding, the court discussed Father's partial participation in testing between April 2022 and the termination hearing in January and February 2023.  The court explained that Father missed nearly one-third of his tests during that time and noted Father's submission of diluted samples and refusal to follow testing procedures.

¶17        Further, the juvenile court considered Father's reasons for his no-shows and found lacking in credibility:

> that he was unable to [participate in substance abuse] test[s] for various reasons, including that he should not have been required to test so frequently because he was testing through probation, that he was on probation at work and unable to test, and that he frequently worked out of town.

The court found these reasons were "inadequate" "excuses" for Father's failure to fully participate and noted that "[i]n addition to the missed urinalysis tests," Father's "August 29, 2022 hair follicle test was positive for methamphetamines and amphetamines."

¶18 While Father argued that follicle testing is imprecise and merely reflected his illegal drug use in March 2022, the juvenile court also heard his testimony about this when rendering its decision. Father's explanation for the positive follicle test does not suggest, much less demonstrate, an abuse of discretion or that the court's order lacks a reasonable evidentiary basis. To the contrary, the juvenile court's thorough parsing of the record demonstrates its order is founded on a reasonable evidentiary basis.

> **B.    The Juvenile Court Did Not Clearly Err in Finding Present the Evidence Required For Termination By A.R.S. § 8-533(B)(3).**

¶19 Even if we were to accept as true Father's claim of months of sobriety, that premise would not foreclose the juvenile court's considered finding of **"**reasonable grounds to believe that [Father's chronic substance abuse] will continue for a prolonged indeterminate period," under A.R.S. § 8-533(B)(3). Because "[c]hronic substance abuse is long-lasting but not necessarily constant substance abuse," we have previously upheld the termination of parental rights under § 8-533(B)(3) despite a parent's periods of sobriety. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 17 (App. 2016) (quoting *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377 ¶ 16 (App. 2010)). In *Raymond F.*, upon which the juvenile court relied, we explained that "temporary abstinence . . . does not outweigh [a parent's] significant history of abuse or [a] consistent inability to abstain" throughout the case. 224 Ariz. at 379 ¶ 29. These precedents and their logic apply with equal force here.

¶20 In considering whether there are reasonable grounds to believe a parent's inability to discharge parental responsibilities will continue for a prolonged indeterminate period, the court can consider: evidence of prior substance abuse, including the length and frequency of the substance abuse, the types of substances abused, the behaviors associated with the substance abuse, a parent's prior efforts to maintain sobriety, and prior relapses. *Jennifer S.*, 240 Ariz. at 287 ¶ 20.

¶21 Here, the court properly considered Father's decades-long addiction to methamphetamine, that his use started as a preteen, and that he "has been battling his addiction for many years." The court considered Father's recent plea to two drug offenses and that Father has struggled with sobriety when out of custody. It further considered Father's ongoing failures to complete or engage in treatment as evidence that substance abuse will persist indeterminately and that Father's failure to abstain despite a pending termination is, under these circumstances, evidence that he has not overcome his substance dependence. *See Raymond F.*, 224 Ariz. at 379 ¶ 29 (failing to remedy substance abuse when confronted with imminent loss of child is evidence a parent has substance dependence).

## II. Reasonable Evidence and Inferences Support the Juvenile Court's Finding that Termination Would Serve the Children's Best Interests Under § 8-533(B).

¶22 Though Father argues termination is not in the children's best interests and contends the court erred by determining otherwise, he does not direct us to any asserted error and essentially asks this court to reweigh the evidence, which we cannot do. *See Jessie D.*, 251 Ariz. at 579-80 ¶ 10 (explaining juvenile court is in the best position to weigh evidence and judge credibility and appellate courts do not resolve conflicting evidence or reweigh evidence).

¶23 Our review of the record reveals two reasons that support the superior court's best-interests findings. First, Father had not demonstrated any prolonged period of sobriety and could not provide a stable and secure home that was safe from illegal substances. Second, the children are adoptable and in positive placements willing to adopt them. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶¶ 12, 14 (App. 2002) (establishing bests interests by preponderance of the evidence requires "either showing an affirmative benefit to the child by removal or a detriment to the child by continuing in the relationship.").

¶24 Accordingly, we affirm the court's order terminating Father's parental rights to the children. *See Timothy B.*, 252 Ariz. at 474 ¶ 14 (stating we accept findings supported by reasonable evidence and will affirm unless the court abuses its discretion); *accord Jessie D.*, 251 Ariz. at 579-80 ¶ 10; *Alma S.*, 245 Ariz. at 151 ¶ 18.

¶25       Finally, DCS asks us to reverse the juvenile court's finding it had not made diligent efforts toward reunification, given that Father "did not have the benefit of court-appointed counsel for [fourteen] months." However, Father does not raise this issue in challenging the juvenile court's termination order, making its resolution unnecessary to our decision in this appeal.

## CONCLUSION

¶26       For the reasons stated, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA