NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO I.C.

No. 1 CA-JV 25-0144

FILED 03-09-2026

Appeal from the Superior Court in Maricopa County
No. JD43566
The Honorable Michael Rassas, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant Leticia C.*

Arizona Attorney General's Office, Phoenix
By Rachael Andrews
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee I.C.*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

**¶1**　　　　Leticia C. ("Mother") appeals the superior court's termination of her parental rights to I.C. ("Child").[1]　We affirm.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2**　　　　Mother has struggled with substance abuse since she was a teenager, and she continued to use methamphetamine and fentanyl while pregnant with Child.

**¶3**　　　　Child was born substance-exposed in early November 2023. Weeks later, he was discharged from the hospital under an in-home safety plan, which required his maternal grandmother ("Grandmother") to provide supervision.　The safety plan also required Mother to engage in substance-abuse services.　But Mother did not engage in the services and instead continued using methamphetamine and fentanyl.　Within days, Grandmother requested law enforcement remove Mother from the home based on her substance abuse and erratic behavior, which they did.

**¶4**　　　　In late November 2023, the Department of Child Safety ("DCS") placed Child in Grandmother's care and petitioned for a dependency based on Mother's substance abuse, mental health, and neglect.　Mother did not contest the petition, and the court found Child dependent in March 2024.

**¶5**　　　　Both before and after the dependency finding, DCS provided Mother with substance-abuse treatment, drug testing, parenting classes,

---

[1] Child's father's rights also were terminated, but he is not a party to this appeal.

[2] We view the facts in the light most favorable to upholding the superior court's order.　*Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

and supervised visitation, with Mother only participating in the visitation. In January 2024, Mother began serving jail terms for crimes against Grandmother, so her visitation became virtual and the other services were closed out. And when she was re-offered services upon her release from jail in March 2024, she failed to engage beyond completing a substance-abuse intake in April 2024 (at which time she confirmed she had resumed using drugs) and calling into drug testing once in May 2024.

¶6          Beginning in May 2024, Mother was incarcerated for several more months for assaulting a police officer while under the influence. DCS set up virtual visitation but the renewed referrals for other services were closed out. And again, Mother resumed her drug use upon her release from jail. She committed a new crime against Grandmother and was incarcerated in October 2024, again receiving virtual visitation.

¶7          A DCS case manager reviewed services with Mother twice before her March 2025 release from jail and once the day after, when in-person visitation resumed. But almost immediately thereafter, Mother resumed using drugs.

¶8          Mother finally completed a substance-abuse intake with a residential treatment provider at the end of March 2025. By that time, however, the superior court had changed the case plan from family reunification to severance and adoption. Accordingly, in April 2025, DCS moved to terminate Mother's parental rights based on her substance abuse and Child's time in an out-of-home placement. *See* A.R.S. § 8-533(B)(3), (B)(8)(b).

¶9          In the residential treatment program, Mother participated in substance-abuse services, drug testing, mental-health classes, behavioral therapy, and counseling. In late May 2025, however, she left the program because it "was not for her" and enrolled in a different residential treatment program where she continued to receive substance-abuse and mental-health services. DCS also offered parenting classes, drug testing, visitation, and transportation services, with Mother participating consistently in visitation and sporadically in the parenting classes.

¶10         To her credit, Mother earned a certificate of completion from the second residential treatment program in July 2025. But later that month, she used illegal drugs and overdosed. She then failed to participate in drug testing or complete a new intake for substance-abuse treatment. And although she continued to participate in visitation, she could not get Child to bond with or trust her. Mother often ignored or yelled at Child, did not

come prepared to care for him, and disregarded his safety on at least one occasion. She also appeared to be under the influence in some of her communications to DCS.

**¶11** The superior court held the termination adjudication hearing in August 2025, but Mother failed to appear. The court proceeded in her absence and, on DCS's evidence, terminated Mother's parental rights. We have jurisdiction over Mother's timely appeal under Arizona Revised Statutes ("A.R.S.") §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶12** To terminate parental rights, the superior court must find by clear and convincing evidence that a ground for termination exists under A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination serves the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). On review, we must accept the superior court's factual findings provided they are supported by reasonable evidence and inferences. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We do not reweigh the evidence; instead, we defer to the superior court's determinations on conflicting evidence and witness credibility. *Id.*; *Alma S.*, 245 Ariz. at 151, ¶ 18. We will affirm the superior court's legal conclusions on a statutory basis for termination unless they are clearly erroneous. *Brionna J.*, 255 Ariz. at 478-79, ¶ 31.

**¶13** The court terminated Mother's parental rights on two alternate statutory grounds, A.R.S. § 8-533(B)(3) and A.R.S. § 8-533(B)(8)(b). Each ground required that DCS offer services to reunify the parent and child. *See* A.R.S. § 8-533(B)(8); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). For A.R.S. § 8-533(B)(3), which authorizes termination where a parent has chronic historical drug use that is reasonably likely to persist, DCS must make reasonable reunification efforts. *Jennifer G.*, 211 Ariz. at 453, ¶ 12. And under A.R.S. § 8-533(B)(8)(b), which authorizes termination where a child under age three has been in court-ordered out-of-home placement for at least six months and "the parent has substantially neglected or wil[l]fully refused to remedy the circumstances" warranting the placement, DCS must make "a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8). The court must consider both the availability of reunification services to the parent and his or her participation in the services in considering termination under A.R.S. § 8-533(B)(8). A.R.S. § 8-533(D).

¶14 In providing reunification services, DCS must give the parent "the time and opportunity to participate in programs designed to help [him or] her to become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (citation omitted). DCS must "undertake measures with a reasonable prospect of success," *id.* at ¶ 15 (citation omitted), and must maintain consistent contact with the parent and reasonably assist him or her in areas where compliance proves difficult, *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019). That includes when the parent is incarcerated. *See Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 582, ¶ 21 (2021). But DCS need not provide futile services, "provide every conceivable service[,] or [] ensure that a parent participates in each service it offers." *Christina G.*, 227 Ariz. at 235, ¶ 15 (citation omitted). Nor must DCS duplicate services the parent receives elsewhere. *See In re Pima Cnty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989). And if the parent is dissatisfied with the services DCS provides, he or she must raise the issue with the superior court before the termination hearing or else risk waiver. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶¶ 13-16 (App. 2014).

¶15 Here, Mother challenges DCS's reunification efforts under the alternate statutory termination grounds. She contends that because the dependency petition placed her mental health at issue, DCS should have provided her a consultation with its unit psychologist. But Mother did not raise this issue before the termination adjudication hearing, which generally results in her argument being waived on appeal. *See Shawanee S.*, 234 Ariz. at 178-79, ¶¶ 13-16. But even without waiver, her argument fails.

¶16 DCS's failure to provide Mother a psychological consultation was not unreasonable, even if, as Mother contends, it was a service contemplated by the court and DCS's internal policies. The DCS case manager explained that its psychologist required Mother to show thirty days of sobriety before meeting. Mother did not demonstrate sobriety until 2025, when she participated in the first residential treatment program. And although DCS asked that provider to set up a mental-health evaluation, Mother switched programs before the evaluation could take place.

¶17 Mother contends that she could have participated in a psychological consultation while in jail. But Mother did not demonstrate her sobriety while incarcerated. Moreover, DCS's failure to provide a consultation is not dispositive regarding the sufficiency of services. Regarding Mother's mental health, she was offered services from other sources: counseling in connection with her criminal cases (in which she did not participate) and other mental-health services in both of the residential

programs. Further, regarding the other primary issue of Mother's substance abuse, DCS repeatedly offered appropriate services, but Mother did not seek treatment until late in this case.

¶18 Mother also contends that DCS deprived the superior court of documentary evidence of her eventual substance-abuse treatment. We disagree. To start, this evidence was far from dispositive on the issue of Mother's sobriety in view of her almost immediate overdose after completing the second residential program. Further, evidence of Mother's pre-overdose treatment progress was provided to the court: the DCS case manager testified that Mother participated in treatment and received a certificate of completion.

¶19 On this record, the superior court did not abuse its discretion by finding DCS's efforts sufficient to support termination under either A.R.S. § 8-533(B)(3) or A.R.S. § 8-533(B)(8)(b). Mother does not raise, and therefore has waived, any challenge to the superior court's findings on the balance of the elements set forth in A.R.S. § 8-533(B)(3) and A.R.S. § 8-533(B)(8)(b), and its finding that termination serves Child's best interests. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 1 (App. 2017).

## CONCLUSION

¶20 We affirm the termination of Mother's parental rights.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR